STEVENSON *v.* THE STATE OF GEORGIA.

83  575
102  343
83  575
e123  577

1. Though the charge of the court as to good character of the accused in its relation to reasonable doubt was not quite accurate, the inaccuracy was not of sufficient importance to require a new trial.
2. Though a room be rented out, if the landlord use it to serve drinks to his bar customers, and to play cards with them for money, having a table, cards and "chips" in the room for the purpose, he may, notwithstanding his tenants are also using it for storing their property, etc., be convicted of keeping it as a gaming-house.
3. The evidence was sufficient to warrant the verdict, more especially as the accused, in selecting his witnesses to reply to the State's evidence, chose those who did not know the material facts, rather than those who did, though the latter were equally accessible.

November 4, 1889.

Charge of court. New trial. Criminal law. Gaming. Landlord and tenant. Evidence. Before Judge VAN EPPS. City court of Atlanta. June term, 1889.

Robert Stevenson was indicted for keeping a gaming-house. The State's testimony was to the following effect: Defendant and others were arrested by the police in a room back of defendant's storage-room. Some of them, including defendant, were playing cards, and he had cards in his hands. He had a bar-room in front of his storage-room. He and the others were sitting at a table which had a blanket on it, and he had

thirty or forty chips, two stacks, before him. As the police entered, they all, except defendant, tried to rise from their seats and were told not to move. A half dollar dropped to the floor. A negro started to pick it up, and the policeman threatened to break anybody's head that took it up. No one in the room would claim it, on inquiry by the policeman whose it was. There were decks of cards. There was one window to the room with iron bars on the outside and no shutter, but a curtain inside hanging down within six or eight inches of the bottom. The arrest was made about four o'clock in the afternoon of a week day. In about an hour and a half afterwards, on going back, it was found that the blanket had been removed from the table. These chips are used in gaming-houses for playing poker. The doors were not locked. There was an old broken lounge and five or six chairs in the room. There was a back entrance. Persons inside could see those outside before the latter could see the former. As one of the policeman went through the store-room, he met defendant's clerk with a waiter of glasses, who tried to fasten the door. The room where the arrest was made was eight by ten feet in size. No money was seen but the half-dollar. All but the defendant threw their cards on the table. The property in which defendant did business was rented to him and W. A. Pledger. The defendant rented the entire upper story and two stores below. He rented out one of the stores for a clothing establishment.

The evidence for defendant tended to show the following: The room in question was rented by him to Wardlaw, Nichols & Gray, as a tool-room, and in which to pay off their hands, they being brick-masons. They kept tools in it for some time. The lock was broken. Afterwards, they moved their place for paying off hands, and kept the room for tools. No one had anything to

do with fixing it up but themselves.  They would not have allowed defendant to have had people in there if they had known it.  They paid him 50 cents a week for it.  Had only two· chairs in there.  The lounge, table and curtain were in there when they built the room.  The table had no blanket.  They had complete control of the room.  Never knew or heard of any gaming in it.  Most of their tools were not in the room at the time of the police visit, because they were being used at work.  Defendant leased the whole building and sublet all except the bar-room.  One witness testified that the half-dollar was his; that he came from across the street and went in the room and heard and saw the men talking and drinking; told defendant's clerk to bring some cigars and had the half-dollar to pay for them, but dropped it on the floor when the police came in; claimed it and started to pick it up, and the officer said, " Let it alone or I will crack your face"; had been in the room only three minutes; saw no gambling and no other money; defendant had no cards in his hands.  Graham, Coleman and Curtis were present in the court-room at the time of the trial.  Witness saw the chips and cards scattered around the box.  Three witnesses (one of them introduced by the State) testified that defendant's general character was good.

Defendant's statement corresponded with the testimony introduced for him.  He said that nothing in the room in question belonged to him or was under his control; that as to the occasion testified to, a box of chips and cards had been left in his saloon some days previously by a darkey, who pawned them for whiskey, and they were taken out of there and put in this back room by the clerk, and on this occasion, defendant and some of the crowd took up a deck of cards and chips and were showing one another tricks, while the rest sat by and looked on, but there was no gaming or any-

v 83-37

thing approaching it; no money or other thing of value was bet, and if the room was ever used for gaming purposes, defendant did not know it.—In rebuttal, a witness for the State testified that he was present when the arrest was made; had been there about ten minutes; they had some cards and were engaged with them; saw the checks on the table and the cards in the hands of defendant, Sterling, Baker and Coleman; "I don't say they were playing, only saw the cards in their hands; . . . they were playing but not for money; I was arrested with the crowd; I don't know what game they were playing."

The defendant was found guilty, and moved for a new trial on the following among other grounds:

(1) Verdict contrary to law and evidence.

(2) The court charged: "If the defendant rented these premises from Mr. Lynch, and at the time in question was actually using them in his business, permitting his clerk to serve drinks in there to his customers from his bar, and the defendant in that room suffered others to play and bet for money or other thing of value with cards, and himself played with them in the game, it would be a keeping and maintaining of this place as a gaming-house by this defendant, and it would make no difference whatever that he had also subleased this room to Wardlaw, Nichols & Gray to pay off their hands in there Saturday nights or keep their tools in there when not in use."—Error, because argumentative; only one theory of this branch of the case was presented, and that partially, the court ignoring the evidence tending to show a complete subleasing for an agreed compensation to Wardlaw, Nichols & Gray and complete control by them of the room; not warranted by the evidence nor the law; and misleading.

(3) The court charged: "A landlord cannot in law sublease premises and so far retain control of the rented

premises as to use them in his bar business as a place to serve his customers, and suffer people to game in there with cards in his presence and with his actual participation, and then set up that his own tenant had an exclusive possession under him of such premises."—Error, because argumentative; not law; not warranted by evidence; expresses the court's opinion on facts; confounds the distinction between the control of the room for gaming purposes and control for different purposes, such as serving drinks.

(4) The court charged: "It is always competent, in a criminal case, for the defendant to introduce evidence as to his general good character. The idea of the law is, as to evidence of this kind, that it may be considered by the jury as tending to show, in a proper case, that the defendant would not be likely to commit a crime of the character in question. Where a case is doubtful on its own facts, or resting chiefly or altogether on circumstantial evidence, proof of good character ought to receive an attentive consideration from the jury in passing on the question of guilt or innocence; if, however, the facts proved are such as to make out the defendant's guilt to the satisfaction of the jury beyond a reasonable doubt, good character, no matter how clearly shown, can never properly furnish a defence to crime."—Error, because argumentative and restricting the jury too much; not a proper charge as to circumstantial evidence; improperly cuts the jury off from consideration of proof of good character; and prejudiced defendant's case before the jury by impressing them that he was acknowledging the gaming but putting in his character as a defence. (The court had charged the jury, in effect, that this case rested chiefly on circumstantial evidence, and that the jury ought to give an attentive consideration to the proof of good character in passing on the guilt or innocence of the defendant.)

The motion was overruled, the court stating that seven of the men who were present were in the prisoners' room opening into the court-room, during the entire trial, and the two on bond, Coleman and Sterling, were in the court-room; and that none of these were offered as witnesses for defendant, and no explanation was made for his failure to introduce them. The defendant excepted.

ARNOLD & ARNOLD, for plaintiff in error.

F. M. O'BRYAN, solicitor, for the State.

BLECKLEY, Chief Justice.

1. The charge of the court touching the effect of evidence as to the general character of the accused, tested by *Shropshire* v. *The State*, 81 *Ga.* 589, is not accurate, but under the evidence in this case, the deviation from accuracy is not sufficiently material to require or justify a reviewing court in ordering a new trial.

2. That part of the charge which would seem to imply that a single instance of gaming in the house would impress it with the character of a gaming-house, was given while the court was dealing with the question of control over the room, notwithstanding the accused had rented it out to other parties for certain purposes. The purpose of the court in this part of the charge was to instruct the jury that notwithstanding the room had been so rented, certain acts of control, including the allowance of gaming and the participation therein by the accused himself, would render him responsible as the keeper of the house, if he did keep it as a gaming-house or room. These instructions were substantially in accordance with the ruling of this court upon a like question in *Scott* v. *The State*, 29 *Ga.* 263, in which it was held that under an indictment for keeping a gaming-house, the defendant does not relieve

himself by showing that he had rented out the house before the gaming was done, when it appears that the house was in his possession when the gaming occurred.

3. The evidence, we think, warranted the jury in arriving at a verdict of guilty, more especially as it affirmatively appears that several persons who were present apparently engaged in gaming when the police raided the establishment, were accessible as witnesses, and could have been introduced by the accused, if he had been willing to abide by their testimony. Even his clerk, who must have known whether the room was kept as a gaming-house or not, was not introduced. Had there been any reply to be made to the inculpatory evidence produced by the State, it was clearly in the power of the accused to answer that evidence; and his failure to do so, notwithstanding his ample opportunity, could well be considered by the jury as adding strength and force to the *prima facie* case made out by the State. He introduced other witnesses who did not know the material facts, but carefully avoided introducing those who did know them. "Where a party being apprised of the evidence to be adduced against him has the means of explanation or refutation in his power if the charge or claim against him be unfounded, and does not explain or refute that evidence, the strongest presumption arises that the charge is true or the claim well-founded. It would be contrary to all experience of human nature and conduct to come to any other conclusion." 1 Stark. Ev. 545.

The court did not err in refusing a new trial.

*Judgment affirmed.*