### 3761. KINARD *v.* THE STATE.

If a person, being in possession of a house, makes an executory sale thereof to a lewd woman for the purpose that she may conduct it as a lewd house, and she thereupon occupies it and devotes it to that purpose, he stands in such an accessorial relationship to her act as to be indictable under the provisions of the Penal Code (1910), § 382, which makes it a misdemeanor for any person to "maintain and keep a lewd house."

DECIDED NOVEMBER 20, 1911.

Accusation of misdemeanor; from city court of Fitzgerald—Judge Wall. September 19, 1911.

*Elkins & Wall, D. E. Griffin, C. B. Teal,* for plaintiff in error.
*Alex. J. McDonald, solicitor,* contra.

POWELL, J. Kinard was indicted under section 382 of the Penal Code (1910), which provides: "If any person shall maintain and keep a lewd house, or place for the practice of fornication or adultery, either by himself or others, he shall be guilty of a misdemeanor." In this State, where no difference between actual principals and those sustaining accessorial relations is made, any one who in any wise aids or abets or assists in keeping or maintain-

ing a lewd house may be convicted as a principal under this section. Under the evidence in this case we would have no hesitancy in affirming the judgment on the ground that there was enough to justify the jury in finding that the defendant gave aid otherwise than by the act which we are about to discuss. However, the court charged the jury as follows: " I charge you in this case that if you find, from the evidence, the truth of this case to be that the defendant, Kinard, in any way let, by sale, or lease, or otherwise, any house in this county, within two years next preceding the date of the accusation, to any person for the purpose of maintaining and keeping a lewd house, and that person to whom he let the said house did actually maintain and keep a lewd house therein, then it would be your duty to convict the defendant." It appeared, from the evidence, that the lewd woman who actually ran the house did not get possession of it from the accused as an ordinary tenant, but that he gave her an executory contract of sale in the nature of a bond for title, whereby she paid $50 down and was to pay $8 per month until the full purchase-price had been paid. There was sufficient evidence to justify the charge, so far as it submitted to the jury the question of whether the defendant made this contract for the purpose that the woman to whom he thus gave the possession of the house might use it as a lewd house.

But this charge and the exception to it bring squarely before us the question: Where one makes an executory sale of property to another for the purpose of the latter's keeping a lewd house there, and the latter in fact keeps the lewd house there, does he commit such an act of aiding or abetting or maintaining as to be held accountable under the statute? It is readily conceded by the able counsel for the defendant that one who rents a house with intention that it shall be used for lewd purposes, or with a knowledge that it will be used for those purposes, may be indicted under this statute. They assert that there is a distinction between one who lets out property for this illegal purpose and one who makes a sale of it. We need not discuss what would be the effect of making an absolute sale, for here the defendant made merely an executory sale, by which he turned over to the lewd woman the possession of the property (together with certain equitable rights which need not now be mentioned), reserving the legal title in himself. There is a Kentucky case which gives color to the contention that

the selling of a house for a bawdry is not illegal. Ross *v.* Commonwealth, 2 B. Mon. (Ky.) 417. In Bishop's New Criminal Law (8th ed.), § 1093, this case is criticised, and Bishop gives it as his opinion that no distinction is to be made "between the sale in fee and a sale for a term of years. In both instances the transfer carries the entire present possession." A reading of the entire context surrounding the section just cited from Bishop's work shows that as to offenses of this nature the citizen owes to the public, as to property in his possession, not only the negative duty of refraining from actively aiding the nuisance, but also the affirmative duty of not relaxing his control, wherever he has it, in such a way as to facilitate the doing of the forbidden thing by some one else. For example in *Scarborough* v. *State,* 46 *Ga.* 26, it was held that, if a man's wife and daughters carried on the practice of fornication and adultery in his home and with his knowledge, he would be guilty of maintaining a lewd house, whether he consented to it or not, provided he did not actively dissent, and did not show that he exercised his powers as head of the family to prevent it.

A person having possession of a house which a lewd woman desires for the purpose of carrying on her practices therein is under the active duty of not renting it to her if he knows that purpose. The law says that he owes that much to society. As to contracts of tenancy this is well settled. But it must be kept in mind that it is not the civil contractual status of the parties that is the important thing in fixing the culpability. It is the landowner's conduct in giving over the possession of the house to the lewd woman, with knowledge of the purpose to which it is to be devoted, that makes him a partner in her crime. In *Kessler* v. *State,* 119 *Ga.* 301 (46 S. E. 408), where the lewd woman was a tenant of the accused, the Supreme Court, speaking through Mr. Justice Cobb, in affirming the judgment of conviction, said: "One placing another in possession of a house for the purpose of being used for lewd purposes, or giving possession with knowledge that it is to be so used, directly aids him who is thus placed in possession in the unlawful enterprise by him therein carried on, and is liable to indictment as the keeper of a lewd house." Now possession is just as effectively given under an executory contract of sale as it is under a contract of tenancy. In all such cases the question of legal title or of equitable title has no importance or bearing. It was so held

in the case of *Scott* v. *State, 29 Ga. 263,* where the crime charged was the maintaining of a gambling-house. See, also, to the same effect, *Stevenson* v. *State, 83 Ga. 575 (2), (10 S. E. 234)*; *Bryan* v. *State, 120 Ga. 201 (4), (47 S. E. 574).* The wrong which the accused does in such cases is not the parting with his title to some estate or interest in the property, of greater or less duration, but his transfer of the possession, knowing that, if he does transfer it, it will be used for immoral practices. As illustrative of how little cognizance the criminal law takes of civil relationships in determining culpability, we may put this supposititious case: Suppose that a man rushed up to a hardware dealer and said, "Give me a pistol, I want to kill my neighbor," and the shopkeeper said, "No; I will not give you a pistol for that purpose," and the would-be murderer said, "Lend me a pistol," and the dealer replied, "No; I will not lend you one, but I will sell you one, and you may do what you please with it." Would the law make any difference in the culpability of the shopkeeper who parted with the possession of the pistol to a man who he knew was about to commit murder, because the possession was transferred under a contract of sale rather than under a contract of lending or a gift?

It is to be noticed, further, that the instruction complained of did not make mere knowledge that the property might be used for lewd purposes the test of culpability. The instruction was that the defendant would be guilty if he sold or let the property "for the purpose" that a lewd house might be maintained. We can not pronounce this charge erroneous.

There are other assignments of error, but none of them are meritorious or of sufficient importance to justify a reversal.

*Judgment affirmed.*