26797. CHEATHAM *v.* THE STATE.

DECIDED APRIL 26, 1938.

*Alfred D. Hornstone, Homer A. Glore, Louis M. Tatham,* for plaintiff in error.

*John A. Boykin, solicitor-general, J. W. LeCraw,* contra.

GUERRY, J. The defendant, C. H. Cheatham, was jointly indicted with Hollis Simmons and C. A. Short for the larceny of a certain described automobile, the property of Sig Samuels. It appears from the evidence that on September 17, 1937, Samuels parked his automobile on a certain street in the City of Atlanta about 12:45 p. m., and that upon his return about 1:30 p. m., it had been stolen. The car was recovered in Dalton, Georgia,

about —— miles from Atlanta, that afternoon. The circumstances of its recovery appear from the testimony of deputy sheriff, Joe Bryant, of Dalton, which is substantially as follows: "I remember the time that Mr. J. A. Warren from the Automobile Underwriters' Association came to Dalton, Georgia, and brought back a Chevrolet coupe. . . That was on the 18th of September, I believe it was. We got the car between 3:25 and 4:00 o'clock the afternoon before, and Mr. Warren had ridden up there to get it. The first time I saw that car was about three miles I imagine south of Dalton, at a filling-station, on the Dixie Highway to Atlanta. It was headed north. I first saw the car there at the filling-station, and I went over and saw the car and I saw the men first; they acted like they were pretty drunk. I was the only officer there and I didn't feel like tackling them by myself, and I went on down and got my chief to go back with me. There were three men with the car; there were two men on the inside, and the other was outside. Cheatham was inside, and the last one named, Simmons, was on the outside, and the other one was sitting in the car. . . I got the other officer and came back down the road, and they were coming into Dalton, and we turned around and followed them for two or three blocks and they stopped on the side of the street, and we pulled up beside them, and I got out and went around to the south side of the car, and I got on the side of the car, and told them to drive on to the station. Simmons was driving the car. . . They were pretty lively; pretty drunk, all three of them, at the time." It further appears that the officers did not know at the time of the arrest that the car had been stolen. The license plate on the car was found bent, and it was thereafter discovered that the car had been stolen. It is insisted that the judge committed error in overruling the motion for new trial which contained only the general grounds, in that, while the evidence may be sufficient to support a conviction of the driver of the car, on the theory that he was in the recent, unexplained possession of the stolen car, it is not sufficient to support a conviction of the defendant, for the evidence merely shows that he was seen riding therein.

It is well settled in this State that in a prosecution for larceny the recent, unexplained possession of the property alleged to have been stolen by the defendant is considered sufficient proof, if the

jury sees fit to so accept it, to satisfy the requirements of the circumstantial evidence rule as contained in Code, § 38-109. It is true that the defendant's possession must be personal, conscious, and exclusive, but "possession may be personal and exclusive, although it is the joint possession of two or more persons." 36 C. J. 872. "The exclusive possession discussed in the authorities as a necessity to the presumption [inference] of guilt is not necessarily the possession of a single defendant. Two or more may have the exclusive possession of stolen property. One defendant in the crime may hold the actual possession of stolen property for himself and other defendants." Weisman *v.* U. S., 1 Fed. (2d) 696; State *v.* Raymond, 46 Conn. 345; State *v.* Costin, 46 Wyo. 463 (4) (28 Pac. (2d) 782); State *v.* Prunty, 276 Mo. 359 (208 S. W. 91). It is perhaps true that where several persons are apprehended riding in an automobile which has been recently stolen, and there are no other incriminating circumstances, that the driver of the automobile would be held prima facie in exclusive possession thereof. In the present case there can be no question but that Simmons, jointly indicted with the defendant, who was found driving the car proved to have been stolen, was in possession thereof. There is however no conclusive presumption that he was in exclusive possession. The above authorities lay down the rule that the possession may be exclusively in two or more persons. Does the evidence in the present case indicate that the relationship of the defendant to the car which he was occupying was other than that of passenger? The character of possession is determined by the kind and character of the property. In order to raise the inference of guilt it is not always necessary to show actual manual possession. Some things, such as an automobile, are not capable of being carried in one's hands or in one's pocket.

In the present case there are circumstances other than the isolated fact that defendant was apprehended riding in the automobile, which, by way of inference, tend to throw light on the relationship of the defendant to the stolen car. The whole case, as appears from the evidence, is that not more than three or four hours after the car was stolen the defendant was apprehended riding therein with two others, one of whom was driving. They were traveling away from Atlanta, and when apprehended were some distance therefrom and all three were decidedly drunk. It is

to be remembered that it is within the province of the jury to draw such inferences and conclusions from these facts as in their judgment they will warrant. *Berry* v. *State,* 10 *Ga.* 511. Unless it can be said that fair-minded men could not reasonably infer that the three were in exclusive joint possession of the car, and were in particeps crimini, this court can not hold that the verdict is un-supported. It is strongly inferable from the evidence that the three were not strangers, and that in the possession of the car they were acting in concert. Only a few hours before their apprehension the car had been stolen at a distant point, and at the time of their arrest they were thoroughly intoxicated. In becoming intoxicated they were apparently in one accord, and this condition must have been brought about by their drinking along the way. If they be-came intoxicated together, and were apprehended riding in a car which only a few hours theretofore had been stolen at a distant point, traveling away from the place of theft, is it not strongly in-ferable that they were acting in concert, i. e., that they "breathed together"? We think so.

In State *v.* Kehoe (Mo.), 220 S. W. 961 William Kehoe and Ray Hake were jointly indicted for the larceny of an auto-mobile belonging to Arthur Bick. The evidence disclosed that the automobile was stolen from in front of the union station in St. Louis, Missouri, on June 26, 1918. The next day the city marshal and chief of police of Mexico, Missouri, spotted the car, and gave chase for about twelve miles, during which time they were forced to drive in excess of sixty miles per hour. The two defendants were occupying the car, with Hake doing the driving. No one saw Kehoe driving the car. Kehoe was convicted. On appeal he com-plained that the State failed to make out a case, because it did not prove that he was in exclusive and unexplained possession of the car. The court said, in holding that the position of the defendant was without merit: "When appellant was apprehended, he and Ray Hake were driving the car at a rapid rate and increasing their dis-tance from St. Louis as fast as possible. The officer who inter-cepted them was obliged to drive at sixty miles an hour in order to overtake them, and arrested them at the point of a gun. It was not necessary to show that Kehoe individually was in exclusive pos-session of the automobile, but that the two defendants who were jointly indicted were in exclusive joint possession." It is to be

observed in this case that while the court said that "he [the defendant] and Ray Hake were driving the car at a rapid rate," there was no evidence that the defendant actually drove the car, but the court apparently deduced this conclusion, from the evidence, that in running from the officers they appeared to be acting in concert.

Another circumstance which the jury had the right to take into consideration in testing the guilt or innocence of the defendant, was that he failed to produce either Simmons or Short, who certainly knew whether he was in active possession of the stolen automobile or not. *Hunt* v. *State*, 81 *Ga.* 140 (7 S. E. 142) ; *Saffold* v. *State*, 11 *Ga. App.* 329 (75 S. E. 338) ; *Stevenson* v. *State*, 83 *Ga.* 575 (10 S. E. 234) ; *Mills* v. *State*, 133 *Ga.* 155, 158 (5) (65 S. E. 368). We are of the opinion that the evidence was sufficient to authorize the jury to infer that the three defendants were in joint and exclusive possession of the stolen automobile, and that the jury were therefore authorized to find the defendant guilty of the larceny. The judge therefore did not err in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*