### 29213. WEEKS *v.* THE STATE.

Decided January 22, 1942.

*Wilbur B. Nall, Luther Roberts,* for plaintiff in error.

*John A. Boykin, solicitor-general, Durwood T. Pye, J. R. Parham,* contra.

BROYLES, C. J.   Carl Weeks was jointly indicted with Howard Darnell for the larceny of a described automobile, the property of N. H. Bailey; the indictment alleging that, "prior to committing the above charged crime," Weeks and Darnell had been convicted of designated felonies and sentenced to confinement and labor in the penitentiary for each of those crimes.   On October 10, 1940, Darnell was tried on the above indictment and acquitted; and on March 10, 1941, a jury convicted Weeks of the offense charged and fixed his sentence at five years.   Weeks's amended motion for new trial was overruled and he excepted to that judgment.

The brief of evidence discloses that the automobile in question belonged to N. H. Bailey and was worth about $650; that on the night of August 30, 1940, Mrs. N. H. Bailey parked it in front of her father's home in the City of Atlanta and it was gone the next morning; that she immediately notified the Atlanta police department of the loss of the car, and at about noon of September 3, 1940, police officers of the City of Atlanta located it on Marietta Street; that the officers stopped the automobile after a short but rapid chase and "Darnell was driving the car and Weeks was riding in it;" that both occupants of the car fled, and Darnell was not caught until several days later; that the officers ran Weeks "for about twelve blocks . . through fields and alleys and everywhere else, and finally caught him under a house over there back of the Terminal Station;" that when caught Weeks said that "Darnell was in the whisky business and that he was going to go with him and get a load of whisky," but did not tell who was driving the automobile; and that Weeks and Darnell had been knowing each other "a year or more."   The State also introduced in evidence an indictment charging that "Carl Weeks, alias James Wallace," and another person committed the offense of robbery on June 23, 1932, in Fulton County, Georgia.   To this charge Weeks pleaded guilty and was given a sentence of twelve months.   The State next introduced in evidence an indictment charging that Weeks committed the offense of larceny of an automobile on Feb-

ruary 15, 1934, in Fulton County, Georgia. To this charge Weeks also pleaded guilty and was sentenced to the penitentiary. The next indictment introduced charged "W. C. Johnson and Carl Weeks, alias George Allen, alias James A. Wallace," with possessing burglary tools on April 30, 1936, in Fulton County, Georgia. A jury found Weeks guilty on this charge and the court sentenced him to a three-year term in the penitentiary. The defendant, Weeks, introduced no evidence, but made to the jury a statement, the material parts of which follow: "I had been in and was in the whisky business, and this boy . . came by the station where I was hanging out and told me he had a load of liquor out in the edge of town in the woods and asked me to go out there and look at it. In fact, I was going to buy it. As I think the owner of the car stated, the back seat and all was out. The keys were in the switch. I didn't pay any attention because I didn't know the boy was stealing cars, in that line of business, and I wasn't interested in that. I was merely trying to make myself some money, and he was trying to sell me some whisky at a reasonable price, and I didn't know the car was stolen, and so when it wrecked this boy said 'Run,' and naturally, I don't know, I had just been in trouble before, and I ran and tried to get away. Since that time the boy has come to trial and been tried by a jury and come clear for stealing the car. The boy was driving it. Still, I am being brought up here and tried for it, and I am not guilty of any implication in it, or knowing it was stolen, or having to do with the stealing of it. I am guilty of being in it and going out there to buy a load of whisky. That is all I can say."

1. Special ground 1 avers that the court erred in charging the jury upon the law of conspiracy (1) because Darnell's previous acquittal of the offense charged jointly against him and Weeks left no one with whom Weeks could have conspired, and therefore eliminated conspiracy from the case; and (2) because there was no evidence, either direct or circumstantial, to warrant the charge. "In criminal law, conspiracy is a combination or agreement between two or more persons to do an unlawful act, and may be established by proof of acts and conduct, as well as by direct proof or by express agreement." *Bolton* v. *State,* 21 *Ga. App.* 184 (94 S. E. 95), and cit.; *Thomas* v. *State,* 56 *Ga. App.* 381 (2) (192 S. E. 659). In *Tanner* v. *State,* 161 *Ga.* 193 (11) (130 S. E. 64) the court

approved the following charge: "A conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, unlawful either as a means or as an end. This agreement may be established by direct proof, or by inference, as a deduction from conduct, which discloses a common design on the part of the persons charged to act together for the accomplishment of the unlawful purpose. This question, that is, whether or not a conspiracy has been established, is solely for the jury to determine." To the same effect is *Harris* v. *State,* 184 *Ga.* 382, 392 (191 S. E. 439). Applying the rule of law approved in the above decisions to the facts of this case, we are satisfied that the evidence warranted the court in submitting to the jury the question as to whether a conspiracy had been proved, and in charging the law applicable to conspiracy.

But was the question of conspiracy eliminated from Weeks's case by reason of the acquittal of Darnell of the offense charged against them jointly? We think not. There is a wide difference between those cases where the substantive offense of conspiracy is charged and the combination is the very gist of the offense, and that other class of cases where the crime charged is some other offense, such as murder or the larceny of an automobile, and the conspiracy is proved merely as an evidentiary fact to sustain the real charge. For instance, to "render a conspiracy indictable at common law, no overt acts in carrying out the design of the conspirators were necessary. The conspiring was sufficient to authorize an indictment." *Brown & Allen* v. *Jacobs' Pharmacy Co.,* 115 *Ga.* 429, 433 (41 S. E. 553). To the same effect is the statement in 5 R. C. L. 1066, § 7, that "the criminal offense, at common law, is complete as soon as the confederacy or combination is formed." "While the common-law offense of conspiracy has not been incorporated in the Penal Code, our books recognize that one may conspire with another to commit a crime. In such instances the crime is that prohibited by the statute, and the conspiracy is referred to as an incident, and one of the means by which the act is accomplished." *Bishop* v. *State,* 118 *Ga.* 799, 802 (45 S. E. 614), citing *Nobles* v. *State,* 98 *Ga.* 73, 78 (26 S. E. 64), where the court said: "While the indictment in the present case alleges a conspiracy between the defendants in the execution of a common purpose to murder the deceased, it is not an indictment for the tech-

nical offense of conspiracy, which involved at common law proof not only of the illegal act, but the unity of purpose between the conspirators. In that case the conspiracy was the gist of the offense, the illegal act only an incident which served to characterize the conspiracy. Hence, it was held that if the proof of the conspiracy failed as laid, the accused must be acquitted. The provision of our Code above referred to eliminates however that difficulty, even if in cases like the present the doctrine could ever have had application. It will be observed that the distinction between the present [case] and cases like those above referred to lies in the fact that in such cases the conspiracy was made by statute the central incriminating fact, the ultimate result—the homicide—the incident; while in the present case the homicide constituted the breach of the public law, and the conspiracy was only incidentally the means by which the violation of the law was accomplished. It could have been as well accomplished by the commission of the homicide by one person alone, as by that person acting in conjunction with many; and hence the proof of the conspiracy, the conspiracy itself not being a substantive part of the offense, was not necessary to a conviction of those persons who were shown to have participated in both the criminal design and the criminal act."

In *Daniels* v. *State,* 58 *Ga. App.* 599 (9) (199 S. E. 572), a case where several persons were jointly indicted for the offense of robbery, this language is used: "The crime is the act prohibited by statute, but not the conspiracy alone. The conspiracy of itself is no crime. The conspiracy is an incident to, and one of the means by which, the act is accomplished." Two or more persons jointly indicted may be separately tried and, "If the offense be such as requires the joint action and concurrence of two or more persons, the acquittal or conviction of one shall not operate as the acquittal or conviction of any of the others not tried, but they shall be subject to be tried in the same manner." Code, § 27-2101. "When two are jointly indicted for murder as principals in the first degree, and one is convicted of voluntary manslaughter, and subsequently the other is acquitted, this fact of itself would not entitle the former to a new trial; and this is especially true where the evidence authorized the finding that the act of killing, while actually perpetrated by the one acquitted, was, under legal principles, imputable to the one convicted." *Maughon* v. *State,* 9 *Ga.*

*App.* 559 (3), 564 (7 S. E. 922); *Willis* v. *State,* 28 *Ga. App.* 757 (113 S. E. 39); *Ray* v. *State,* 58 *Ga. App.* 444 (198 S. E. 807). In the *Maughon* case the court said: "The verdict in the Elrod case, although conclusive as between the State and himself, is not in any sense conclusive of the truth of the transaction. He may have been guilty notwithstanding the verdict of the jury. There may have been reasons in his case, growing out of the inability of the State to produce the same evidence on this trial as on the first, which induced the jury to acquit him, which did not exist in the case of Maughon; but, irrespective of this question, we are simply concerned with the proposition of law that, where two are jointly indicted as principals, the acquittal of one does not in any legal sense inure to the benefit of the other, though it may be a circumstance of exculpation." "The rule that the acquittal of one of two alleged conspirators negatives the existence of the conspiracy does not apply where proof of the conspiracy is sought to be introduced merely as an evidentiary fact to sustain another charge, such as murder. In such case the conspiracy may be inquired into notwithstanding the acquittal of one of the alleged conspirators." 19 Ann. Cas. 1255. The foregoing rule appears in the same language in 5 R. C. L. 1079, § 23, and in 11 Am. Jur. 561, § 26.

In State *v.* Crofford, 133 Iowa, 478 (110 N. W. 921), the court said: "After the first trial of defendant, Hammond, who was jointly indicted with him, was put on trial and acquitted. The trial court declined to treat this as an adjudication that the parties named had not conspired to commit the offense. Had the charge been conspiracy, there would have been much force in this contention, for a combination of two or more is essential to the commission of that offense, and it necessarily follows that, if one only of two charged therewith is found not guilty, the other must be innocent, for one alone could not have committed the particular offense. . . But conspiracy was not alleged in the indictment. Evidence thereof was introduced merely as an evidentiary fact, tending to establish the charge of murder. The conspiracy to commit a crime and the crime itself are distinct offenses, and the acquittal of one . . is not a bar to the prosecution of the other." The indictment in the case sub judice did not charge the offense of conspiracy, but did charge the statutory offense of larceny of an automobile. Indeed, the word "conspiracy" does not even appear

in the indictment. The evidence as to a conspiracy was introduced merely as an evidentiary fact to sustain the charge of the larceny of the automobile and was not any part of that offense. Most of the authorities relied on by counsel for the plaintiff in error are cases from other jurisdictions where the conspiracy is the gist of the substantive charge made in the indictment; and no decision from this State has been brought to our attention that conflicts with our view that the prior acquittal of Darnell did not, as a matter of law, eliminate the question of conspiracy from the case. For no reason assigned did the court err in overruling the first special ground of the motion for new trial.

2. Ground 2 of the amendment to the motion for new trial assigns error upon the following excerpt from the charge of the court: "Now, if . . you should determine that the property or the automobile alleged to have been stolen . . was recently thereafter found in the possession of this defendant, or one of his co-conspirators along with him, if you find there was a conspiracy under the terms of the law as I have given to you, etc." Error is assigned because "it had already been conclusively adjudicated . . that . . Darnell was not guilty of the offense charged or of conspiracy to commit said offense and, therefore, could not have been 'one of the co-conspirators;'" and said charge was "misleading to the jury and hurtful to movant because it fastened upon movant the consequences of the presumption which arises from the recent possession of stolen property, when, under said charge, such possession need not have been that of movant at all, but might have been the exclusive possession of Darnell, as in fact the record shows." We have already held that the prior acquittal of Darnell of the offense jointly charged against him and Weeks did not determine in the instant case that they did not enter into a conspiracy to steal the automobile in question, and there is no merit in the ground.

3. Special ground 3 avers that the court erred in charging the jury upon the question of the recent possession of stolen property, because the evidence shows that the automobile was in the exclusive possession of Darnell and there was no evidence to support the charge. We have already expressed our view that the evidence warranted the court in submitting to the jury the question as to whether Darnell and Weeks had conspired to steal the automobile,

and, if they had, the possession of Darnell would be the possession of Weeks. Furthermore, the headnote in *Cheatham* v. *State*, 57 *Ga. App.* 858 (197 S. E. 70), reads: "Evidence *held* sufficient to authorize a finding that the defendant and two others, who were apprehended while riding in the stolen automobile a few hours after its theft, and at a point some distance therefrom, were in joint and exclusive possession of the car, although there was no evidence that the defendant drove the car. Recent, unexplained possession of stolen property is sufficient to support a conviction of larceny." This ground discloses no reversible error.

4. It appears from ground 4 that the State's attorney asked a witness the following question: "Then what did the defendants, Weeks and Darnell, do?" The witness replied: "They threw the car back in reverse and run backwards down the street." Counsel for Weeks objected to the use of the word "they" in the answer because it was manifestly impossible "for 'they' to throw the car in reverse and run backward down the street." The court: "I will allow you to cross-examine him as to that." It appears from the record that counsel did cross-examine the witness almost immediately, and that the witness swore that "Howard Darnell was driving the car and Weeks was riding in the car." In view of the way in which the question was framed the answer was the natural way to reply to it, and it is most improbable that any juror would have thought the witness intended to testify that both Darnell and Weeks were driving the automobile. But, in any event, the witness's testimony on cross-examination removes all doubt as to who was driving the car. The ground is without merit.

5. In so far as ground 5 complains that the evidence was entirely circumstantial and insufficient to support the verdict it is merely an elaboration of the general grounds and there is no merit in the very general assignment of error that "it was prejudicial and harmful for the court to fail . . to submit to the jury fully, fairly, and impartially movant's theory of defense as outlined in his statement."

6. In considering the general grounds of the motion for new trial let us advert briefly to some of the evidence in the case and the law applicable thereto. Weeks and Darnell, who had been acquainted with each other for a year or so, were both found in the automobile four days after it was stolen. While Darnell was the

driver of the car, the evidence and the defendant's statement lead strongly to the conclusion that Weeks was sitting on the front seat with him; and "two or more may have the exclusive possession of stolen property." *Cheatham* v. *State,* supra. And the "recent, unexplained possession of stolen property is sufficient to support a conviction of larceny." *Cheatham* v. *State,* supra; *Darnell* v. *State,* 58 *Ga. App.* 6 (197 S. E. 347) ; *McAfee* v. *State,* 68 *Ga.* 823; *Jones* v. *State,* 105 *Ga.* 649 (31 S. E. 574). Furthermore, when the officers succeeded in stopping the automobile after a hard chase both the occupants fled precipitately, and the jury may have concluded that Week's statement as to why he fled was inadequate to explain his flight, and also that his flight did not comport with his explanation of how he happened to be in the automobile. Of course flight that is not satisfactorily explained is a circumstance that may be considered by the jury in determining the guilt or the innocence of the accused. *Kettles* v. *State,* 145 *Ga.* 6 (3) (88 S. E. 197). It is also true that while the primary object of alleging and proving that Weeks had been previously convicted of numerous designated felonies and sentenced to confinement and labor in the penitentiary for each of those offenses was that the maximum sentence be given him under the provisions of Code, § 27-2511, yet such proof —especially as to his previous conviction of the larceny of an automobile—was admissible to show motive, scheme or plan. *Davis* v. *State,* 58 *Ga. App.* 440, 441 (198 S. E. 800), and cit. In short, we think that the evidence, though circumstantial, excluded every reasonable hypothesis except the guilt of the accused.

*Judgment affirmed.* *MacIntyre and Gardner, JJ., concur.*