People of the State of Illinois, Plaintiff-Appellee, v. John Davis, Defendant-Appellant.

Gen. No. 50,931.

First District, Second Division.

March 29, 1966.

James S. Wirt, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was found guilty at a bench trial of theft of an automobile and was sentenced to 5 to 10 years in the penitentiary. He appeals.

Shortly after midnight on July 21, 1963, Police Officers Behnke and Zientek were cruising in a squad car in a southerly direction on South Paulina Street in Chicago. Officer Behnke testified that as the squad car approached the intersection at Monroe Street he observed a 1963 Pontiac speed eastbound out of an east-west alley at approximately 116 South Paulina Street, then turn right and travel south on Paulina Street for a distance of about 110 feet. The Pontiac then turned west into another east-west alley at approximately 126 South Paulina Street. Officer Behnke stated that the police officers immediately gave chase upon seeing the Pontiac drive out of the first alley, and that during the chase they were never further nor closer than 100 feet from the automobile. The Pontiac was observed by Officer Behnke for the entire period of the pursuit, except for "a couple of seconds" or "a few seconds" after it turned into the second alley. The only occupant of the automobile was the driver.

The second alley is bounded on the south side by a factory building and on the north side by an apartment building, which is commonly known as 124 South Paulina Street. The apartment building is immediately adjacent to the alley and to the sidewalk of Paulina Street.

The squad car was driven into the alley and was stopped behind the Pontiac which was some 30 feet into the alley. The Pontiac was driverless, in neutral gear and rolling, and the motor was still running. As the squad car entered the alley, Officer Behnke observed the defendant "along side" or "a couple of feet" in back of the Pontiac and "walking fast" toward Paulina Street down the center of the alley. No person was observed in the alley other than the defendant.

Defendant was confronted by Officer Behnke on the sidewalk in front of the apartment building and was taken back to the Pontiac and questioned. He was asked for his driver's license but stated that he could not drive an auto-

mobile and had no driver's license. Defendant denied having had anything to do with the automobile. Officer Behnke testified that defendant told him that a man named "Slick" had driven the automobile into the alley and had jumped from the automobile and ran into a gangway.

After the questioning, police headquarters was contacted and it was determined that the Pontiac was reported stolen the afternoon of July 20th. Defendant was searched and his wallet, containing a parole card and an identification card, was taken from him. A short while later another squad car arrived at the scene. Defendant was then told to drive the Pontiac to the police station but refused, stating that he did not know how to drive.

Officer Behnke and another police officer, who had later arrived at the scene, drove the defendant to the police station. Upon arriving at the station defendant was ordered to follow the officers into the station, and when they reached a garage at the rear of the station, defendant broke and ran from the officers. He was apprehended after running some 150 feet.

Officer Behnke testified that there were about 15 people in front of the apartment building at 124 South Paulina Street, and that defendant was standing with the group when he was confronted by the officer. No one other than the defendant was questioned concerning the automobile, Officer Behnke stating that he "didn't have time." No search was made of the area by any of the police officers at the scene.

Defendant testified in his own behalf and stated that on July 20, 1963, during the afternoon and until about 10:00 p. m., he was at the home of his sister Mrs. Sirlena Bell, in Chicago. About 10:00 p. m., he and his sister went to the home of his girl friend, Dorothy Richardson, and after staying there some 45 minutes, the three walked to the apartment building at 124 South Paulina Street to

see defendant's brother who was visiting at that address. Defendant testified that as he was speaking to his brother, who was leaning out of a second floor apartment window, an automobile came out of an alley approximately 75 feet to the north of where he was standing. The automobile made a noise as it turned out of the alley, proceeded south on Paulina Street and turned into the alley next to where defendant was standing. As the automobile went into the alley defendant recognized the driver as resembling a person named "Slick" whom he had previously met in a local poolroom. There was a noise in the alley as if the automobile had hit a pole or a garbage can and defendant stepped into the alley to see what had happened. Defendant testified that he saw the man get out of the car and run down the alley in a westerly direction. The squad car then pulled into the alley and Officer Behnke asked defendant if he had been driving the Pontiac, to which defendant replied "No." After the police had determined that the automobile was stolen, defendant was searched, arrested and taken to the police station. Defendant stated that he was ordered by the officers to drive the Pontiac to the station, but had refused for the reason that he did not know how to drive.

Defendant testified that on reaching the police station he overheard one of the officers state that because defendant was a parolee he was in a "mess-up." Defendant stated that he then recalled the warning of his parole officer that any contact with the police for any reason whatsoever would be a violation of his parole. Defendant testified that at this point he broke and ran from the officers and was apprehended a short while later.

The testimony of Dorothy Richardson, Wilbur Davis, Sirlena Bell and Bertha Crape, persons in and around the apartment building at the time of the incident, substantially corroborated defendant's account of the occurrence, with the exception of Wilbur Davis and Bertha Crape who

were either unable to or did not look into the alley. The witnesses were further in agreement that the squad car arrived at the scene about a minute after the Pontiac turned into the alley.

Defendant maintains that the State's evidence failed to establish that he had possession or control over the automobile, that his uncontradicted evidence positively established an alibi and that his conviction rests on circumstantial evidence which can be explained on reasonable grounds consistent with his innocence.

■■■■ It is well settled that the possession of a recently stolen automobile is sufficient to warrant a conviction for theft of that automobile. People v. Litberg, 413 Ill 132, 108 NE2d 468. It is also true that possession of stolen goods may be proved by circumstantial evidence. People v. Gavurnik, 2 Ill2d 190, 117 NE2d 782. However, in order that recent possession be evidence of guilt it must be exclusive in the accused. The possession must be such as to indicate that the accused and not someone else took the property. If the place where the property is found is such that another person could have had access thereto as well as the accused, it cannot be said that the property was in the accused's exclusive possession and the circumstance would not be evidence of his guilt. People v. Lardner, 296 Ill 190, 129 NE 697; Watts v. People, 204 Ill 233, 68 NE 563. Mere association with a stolen article is not necessarily the possession of that article, and before any inference of guilt can arise from the circumstance it must be shown that the accused was in possession. People v. Barnes, 311 Ill 559, 143 NE 445.

The State's evidence shows no connection between the defendant and the man whom Officer Behnke testified he saw driving the Pontiac. Defendant himself was not seen actually in the automobile nor getting out of it. The only association shown between the defendant and the Pontiac was that defendant was "along side" or "a couple

125

of feet" behind the automobile when the police entered the alley. The Pontiac was lost from the view of the police officers for a period of a few seconds, and the first time they observed the defendant was when Officer Behnke testified defendant was walking away from the automobile.

The State maintains that defendant's proximity to the Pontiac when he was first observed raises the presumption that the defendant was the only person who could have had possession of the automobile. The State relies on People v. Skelly, 409 Ill 613, 100 NE2d 915, and People v. Huff, 29 Ill2d 315, 194 NE2d 230, in support of this contention. These cases stand for the proposition that a conviction may be predicated upon circumstantial evidence and guilt inferred therefrom. Furthermore, the circumstantial evidence involved in the Skelly and Huff cases is much stronger than in the case at bar. In the Skelly case defendant was tried for murder and claimed self defense. There was no direct evidence bearing on the question of self defense, but on the contrary, the circumstances strongly indicated that self defense could not have been the reason for the killing, since the defendant, armed with a gun, had sought out the victim for some 13 hours before the victim was killed; defendant immediately fled from the scene of the crime and threw the gun into a a river. In the Huff case defendant was convicted of beating a child to death. Although there was no direct evidence of the fatal beating, a strong inference of defendant's guilt arose due to four separate beatings of the child by the defendant in the two days preceding the child's death. In the case at bar evidence that defendant was near and walking away from the Pontiac does not afford an inference that he was the driver of the automobile at the time it was pursued by the police. During the time lapse when the officers lost sight of the Pontiac

the driver of the automobile could have escaped down the alley.

The case of People v. Wisz, 360 Ill 126, 195 NE 515, is incorrectly cited by the State as standing for the proposition that possession of a stolen automobile may be inferred by an accused's proximity thereto. As the police in the Wisz case were chasing the automobile it crashed, and its two occupants were observed by the police getting out of the automobile and attempting to flee. One of the defendants was found lying near the stolen automobile and the other found across the street under another automobile. The testimony in the Wisz case was to the effect that the police never lost sight of the stolen automobile and its occupants from the time they began to pursue the automobile and the time that the defendants were arrested, that only the defendants were seen getting out of the automobile, and that no one else was in the immediate area of the stolen automobile at the time of the crash. In the case at bar, however, the Pontiac, and its driver, were out of sight for a length of time and the defendant was not seen in the automobile, nor getting out of it. The defendant's alibi, that a man named "Slick" was driving the automobile and escaped down the alley after the automobile struck the pole or garbage can, is consistent with these facts.

The State further contends that the fact defendant attempted to flee custody of the police officers at the time they arrived at the station tends to show a consciousness of guilt and raises an inference of guilt. Ordinarily an attempt to flee custody after an arrest is evidence of guilt, People v. Autman, 393 Ill 262, 65 NE2d 772, but in this case a serious question arises as to the reason for defendant's attempted escape. No attempt to escape was made until after defendant overheard the police officers discussing his parole status. The effect

of his flight in this instance is consequently weakened as evidence of guilt.

No evidence was offered by the State other than the testimony of Officer Behnke. The other officer in the police car was not called as a witness. Although Officer Behnke testified that defendant told him a man named "Slick" had gotten out of the car and ran through a gangway, no attempt was made by the officers to search the area nor was any one questioned other than the defendant. Defendant's claim that he was unable to drive an automobile, which was corroborated by Mrs. Bell, was uncontradicted by the State's evidence.

We are of the opinion that the State failed to prove defendant guilty beyond a reasonable doubt.

The judgment is reversed.

Judgment reversed.

BRYANT, P. J. and LYONS, J., concur.