HENCE MARABLE v. THE STATE.

No. 5642.   Decided February 25, 1920.

Rehearing denied March 24, 1920.

1.—Theft—Sufficiency of the Evidence.

Where, upon trial of theft, the evidence was sufficient to support a conviction under a proper charge of the court there was no reversible error.

2.—Same—Recent Possession—Charge of Court—Rule Stated.

It is not necessary, to constitute legal possession, that the property in question be in the hands or house or on the premises of the alleged possessor, but if the same is in his care, control and management he is the legal possessor thereof, and where the alleged stolen property was secreted in a crib some two or three miles from appellant's house and was there pointed out to the purchaser by defendant or his agent, this was sufficient to charge

him with possession of said property after the same was stolen, and the court properly charging on said recent possession, there was no reversible error.

**3.—Same—Argument of Counsel—Response to Defendant's Counsel.**

Where the alleged improper argument of the district attorney was a legitimate reply to defendant's counsel's argument, there was no reversible error.

**4.—Same—Argument of Counsel.**

Where the district attorney in his argument said that the hour had struck for these thieves to be convicted to the penitentiary, and the court instructed the jury not to consider same, there was no reversible error.

**5.—Same—Impeaching Witness—Supporting Testimony.**

Where the State's witness had been severely attacked in an attempt to impeach him and was confused by testimony that he had made different statements out of court to that on the trial, there was no error in admitting in evidence a prior written statement before the county attorney and which was the same in substance as that which he made upon the trial. Following: Mitchell v. State, 36 Texas Crim. Rep., 302, and other cases; however, the court is not to be understood as holding that a witness may be supported generally by proof of prior statement, as there are well defined exceptions.

**6.—Same—Identification—Stolen Property.**

Where, upon trial of theft of property over the value of fifty dollars, the appellant contended on motion for rehearing that there was not sufficient proof of the identification of the alleged stolen property, but the record on appeal bore out this court's contention that the evidence was sufficient there was no reversible error, and there being no error in other respects the judgment of conviction is affirmed.

Appeal from the District Court of Upshur.   Tried below before the Hon. J. R. Warren, judge.

Appeal from a conviction of theft; penalty, seven years imprisonment in the penitentiary.

The opinion states the case.

*T. H. Briggs,* and *Stephens & Sanders,* for appellant.—On question of argument of counsel: Beach v. State, 210 S. W. Rep., 540; Wilson v. State, 81 Texas Crim. Rep., 216, 194 S. W. Rep., 828.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of argument of counsel: Holmes v. State, 70 Texas Crim. Rep., 214; Ulmer v. State, 71 id., 579.

LATTIMORE, JUDGE,—Appellant was given a sentence of seven years in the penitentiary, for theft of property belonging to one H. Connell. The case was tried in the District Court of Upshur County.

The first contention here made, is that the evidence does not support the verdict. We cannot assent to this proposition. Without giving the evidence in detail, it sufficiently shows that the appellant, about the middle of April, 1918, sold to one Elbert Fluellyn, three cases of lard, of the value of $20 each; two sacks of coffee, of the value of $25; seven cases of lard of the value of $10 per case, and two sacks of sugar of the value of $16.

Fluellyn testified that he paid to appellant $150 for all of this property; that appellant told him at the time he purchased it, that he got it from Mayfield's; that he was "working for the company, and they paid him in groceries." It was shown that appellant did not work for Mayfield, and they did not pay him in groceries.

A part of the coffee bought from appellant by Fluellyn was returned to the officers, and was identified on the trial by Mr. Connell who was the manager of Mayfield's Grocery House. Mr. Connell testified that early in April, 1918, their store was burglarized, and as near as they could estimate, property of the kind, quantity, and value as above stated, was stolen. He identified the coffee returned by the officers as being that taken from them on the occasion in question. We think this evidence fully justified the finding of the jury that appellant was guilty.

The court gave the usual charge on possession of recently stolen property, the form of which this court has often approved. Objection is here urged that there was no evidence calling for such charge. If Fluellyn was to be believed, appellant was in possession of the alleged stolen property about two weeks or less after same was taken from the owner. It is is not necessary, to constitute legal possession, that the property in question be in the hands or house or on the premises of the alleged possessor. He may have the same secreted on another person's premises, or out on the commons, but if the same is under his care, control, and management, he is the legal possessor thereof.

Fluellyn got the alleged stolen property out of a crib some two or three miles from appellant's house, but says that appellant, after selling it to him, told him where to come and get it, and sent a negro boy with him to show him the way and the place This was sufficient to charge appellant with possession of said property after the same was stolen.

Appellant's fifth, sixth, and seventh grounds of error set up alleged improper argument of the district attorney. There is no bill of exceptions setting forth the matter complained of in said fifth assignment. The trial court explains the matter complained of in the sixth assignment, as being a legitimate reply to appellant's criticisms of the actions of the State's attorney in dismissing a number of cases against certain negro witnesses, and under the court's statement, we think no error appears in refusing the special charge asked by appellant. The complaint in the

seventh assignment was that the State's attorney, in his argument to the jury, said, "The hour has struck for these thieves to be convicted to the penitentiary." We do not think this is such argu- ment as would justify us in reversing this case. There was no statement of any damaging facts, or repetition of any abusive lan- guage, and the court instructed the jury that they should not con- sider the statement just quoted.

It seems that the State's witness Elbert Fluellyn, was carried be- fore the county attorney of Upshur County shortly after the dis- covery of the fact that he had bought from appellant the alleged stolen property, and that he made and swore to a statement of the facts before said officer. The State, over appellant's objection, introduced this written statement of said witness on the trial hereof. The court's qualification of the bill of exceptions is as follows:

"I approve this bill with the explanation that the witness had been attached, and refused by the testimony to the effect that he had made different statements out of court to that on the trial, and further, the manner of cross-examination authorized the admission of the statement."

We presume that what the court said in the explanation, was that the witness "had been attacked and confused," and that the explanation should be so read.

Examining the statement of facts in this case, it is apparent that when said witness Fluellyn was turned over to appellant for cross-examination, he was asked if he was not indicted for con- nection with the instant theft, and he admitted such fact. He was also asked, and admitted that the case had been dismissed the morning of this trial. By further questions, it was sought to be shown that he had promised to testify for the State, and that his attorney had told him that he would have to testify for the State; and that he had promised to do whatever his lawyer wanted him to do; that he was now testifying for the State because his case had been dismissed. The witness denied that he was testifying against appellant, but said that he was only telling the truth, "just as it stands."

These questions, and the said testimony, were for the manifest purpose of discrediting the witness, as far as the particular testi- mony given was concerned, and of showing that his testimony, as given, was the result of, or at least affected by, the dismissal of his own case that morning, and was, therefore, corrupt.

In the case of English v. State, 34 Texas Crim. Rep., 200, this Court, speaking through Judge Hurt, said: "Appellant complains of testimony to the effect that the witness gave on the night of the homicide a similar version of the facts attending same as sworn to by him on the trial. Appellant, before this, had made an attack upon him, by trying to prove that his evidence was recently fabri- cated. Under this state of case, the State had the right to sustain

her witness by proving that just after the homicide her witness made the same statement in substance as that sworn to on the trial, and by this means disprove that his testimony was recently fabricated."

In the Reddick case, 35 Texas Crim. Rep., 463, the same eminent jurist said: "If the defendant attempts to show that improper influences have been brought to bear on the prosecutrix, or any other witness, to acuse defendant of a crime, the State would have the right to prove that before these influences were applied, she told the same story as she swears to now on the trial."

In the Mitchell case, 36 Texas Crim. Rep., 302, this Court, again speaking through Judge Hurt, says: "Neal was introduced as a witness for the State. There had been an application and trial for bail, Neal testified on that trial for himself. Before introducing him at a witness in this case a *nolle prosequi* was entered. Upon cross-examination appellant's counsel asked him if his case had not been *nol pros'd*. He answered in the affirmative. Counsel for the State asked him if his testimony of the *habeas corpus* trial was not the same as that given on this trial. He answered that it was. This question and answer were over the objection of appellant, the objection being that you could not thus support a witness. The law is with the action of the court below. Evidently, when the counsel for the appellant proved, that the prosecution had been *nol pros'd* as to Neal, the purpose was to impeach him by showing that that was the cause of his testifying as he did, and that his testimony therefore was corrupt, and perhaps induced by a bargain between him and the State. Under this state of the case the party introducing him could show that he made the same statement before his case was dismissed. This is not an open question."

The last mentioned case is in all respects similar to the instant case, save that in the Mitchell case the witness who was attacked was permitted to state that before his case was dismissed, his statement of the matter was the same as his testimony then being given; and in the instant case, the statement was introduced, and appears upon inspection to be substantially the same; in the one case the showing that it was the same, being by statement that it was, and the other by profert. A Comparison of the testimony of Fluellyn, as given on the witness stand in the instant case, and the statement, as made to the county attorney before the prosecution against him was dismissed, will disclose no material variance in any point. To the same effect as the above cases, is the case of Ballow v. State, 42 Texas Crim. Rep., 266; the Keith case, 44 S. W. Rep., 849; the Williams case, 67 Texas Crim. Rep., 303, and the Jones case, 38 Texas Crim. Rep., 103.

We are not to be understood as holding that a witness may be supported generally by proof of prior statements similar to the

testimony given by him on the trial. When a witness is discredited by proof of bad general reputation, or the commission of other crimes, or when under cross-examination, he contradicts himself, or tells his story badly, or develops a poor memory, we do not think he may be thus sustained; when he is attacked by testimony, either by his own admission, or the word of others, the effect of which attack is to show that on former occasions his narration was variant from that now given, he may be supported by proof of former statements similar to his present testimony; likewise, when the form of attack is testimony, either by his admission or otherwise, of a corruptive influence which has approached the witness since the time of the occurrence to which his testimony relates, by which influence his instant narrative might reasonably be affected, he may be sustained by testimony as to his account of the same matter prior to the approach of such corruptive influence. Branch's An. Penal Code, Secs. 181-182.

We conclude that no error was committed in the admission of this statement made by the witness Fluellyn to the county attorney.

This disposes of the contentions presented by appellant, and no reversible error appearing, the judgment of the trial court is affirmed.

*Affirmed.*

### ON REHEARING.

### March 24, 1920.

LATTIMORE, JUDGE.—Appellant presents his motion for rehearing, complaining chiefly that we erred in holding the evidence sufficient to sustain the judgment; and further urging that there was no identification of the property sold by appellant, and no positive testimony of any loss by the alleged owner.

We have again gone over the statement of facts on these points. The house from which the alleged stolen property was taken, was a wholesale grocery, carrying a large stock of various kinds of groceries. H. Connell was the manager, and as such had the care, control, and management of said property, and was familiar with said stock. He testified as follows:

"On the second day of April, 1918, we had some property stolen down there . . . There was some property stolen, or missed. . . . There was some sugar taken . . . packed in sacks . . . one hundred pound sacks . . . Yes, there was some lard missed . . . I identified the coffee that was recovered. . . . The value of the two sacks of coffee I recovered was about twenty-five or thirty dollars. The two 100 pounds sacks of sugar were worth $8 a sack; three 100 pound cans of lard was worth

3—87—T. C.

twenty cents a pound; the seven cases of lard was worth $10 a case."

The property thus spoken of by Mr. Connell, was sold by appellant to witness Fluellyn, who testified to the statements made by appellant in accounting for his possession of said property, and right to sell same. These statements made by appellant, were unquestionably false. There was no attempt made on the trial by appellant, or by any witness for him, to suggest that said property was honestly acquired by him, or that he had no connection therewith, or that his connection, if any, was innocent. The evidence was sufficiently strong to warrant the jury in convicting appellant, and giving him the punishment fixed.

We think the matter of the admission of the statement of the witness Fluellyn, made some time after the alleged theft, was correctly decided in the original opinion.

We have carefully gone over each contention made by appellant in his motion, but regret our inability to agree with same.

The motion for rehearing will be overruled.

*Overruled.*