STATE OF IOWA, Appellee, v. GEORGE DAVIS, Appellant.

No. 40700.

APRIL 5, 1932.

Carl S. Missildine, County Attorney, and Francis Kuble, Assistant County Attorney, for appellee.

James A. Merritt, for appellant.

GRIMM, J.—On the 29th day of August, 1930, the Grand Jury of Polk County, Iowa, returned an indictment against the defendant, George Davis, for larceny of a motor vehicle. The

defendant pleaded not guilty, and upon a trial by a jury, the defendant was found guilty and sentenced for an indeterminate period of not to exceed ten years. The facts may be briefly stated as follows:

The defendant is a married man, and living with him at his home in Des Moines were his wife and small child and his wife's grandmother and grandfather. He worked at a packing plant in Des Moines.

The automobile in question was a Hudson coach, model of 1926, belonging to Dr. P. A. Jensen, a dentist. At about 9:30 in the evening of August 6, 1930, the dentist parked the automobile in question on the west side of Eighth Street between Grand Avenue and High Street in Des Moines, near the apartment in which he was living. He gave no permission to anyone to use the car. Sometime between one and two o'clock of the following morning, August 7, 1930, the automobile was found parked in front of a building within a block or two of the police station in East Des Moines, which was approximately twelve blocks from where it had been parked by the owner. The key to the Hudson coach locked the shifting apparatus, and was left in the car by the dentist. When the car was found, the key was in the car. The police officer who found the car locked the shifting device and took the key and then posted himself in the darkness in a' building to await results. Shortly thereafter, the defendant came to the car, stepped into it, and started the motor, but apparently did not move the car. The defendant was immediately arrested by the said officer, who was watching for him. By way of explanation, it may be said that locking the shifting device on this model did not prevent starting the motor.

It appears that sometime during the afternoon of the 6th of August, 1930, the defendant and one John Astley procured some intoxicating liquor, and spent the late afternoon and evening drinking and driving about the city in Astley's car. Late in the evening, they stopped the Astley car, in which they were riding, in front of a residence, an occupant of which complained to the police, who, appearing promptly on the scene, arrested Astley, apparently overlooking the defendant. Astley was taken to jail and locked up.

It is the contention of the defendant that thereafter he started towards the police station, when he was overtaken by

someone driving the car in question. The defendant arranged with the driver thereof to take him in and drive him to the police station. The defendant expressed a desire to see his companion, Astley, in the jail. The stranger agreed to wait around the corner. The defendant claims to have talked with Astley through a window in the jail, and upon returning to the car, found the driver gone; and on stepping into the car, he was arrested by the policeman, as previously stated.

Upon the record as thus made, the only evidence of the defendant's connection with the larceny is the fact that he stepped into the car and started the motor.

Numerous errors are relied upon for reversal, but in our view of the case, it is not necessary to consider more than one of them.

Assuming, without deciding, that stepping into the car and starting the motor, without moving the car, constituted a possession of personal property recently stolen, we pass to a consideration of the instructions of the court on the question of the legal effect arising from the possession of recently stolen property.

In one of the instructions, the court said, in substance, that the possession of stolen property very shortly after the same had been stolen, and without any satisfactory explanation of how possession was obtained, may, under some circumstances, under the law, justify the jury in presuming that such possession was a guilty one on the part of the defendant, and that, while such evidence was not conclusive of guilt, it should be considered by the jury in connection with all the other facts and circumstances in the case. The trial court then said:

"The presumption of guilt arising from the possession of recently stolen property, when taken in connection with all the other evidence in the case, must be sufficient to establish the guilt of the defendant beyond a reasonable doubt, or else it is your duty to acquit him."

In effect, the court, in its instructions relative to the possession of recently stolen property, told the jury that such possession amounted to a presumption that the defendant had stolen the property. The effect of this was to cast the burden upon the defendant to prove his possession was honestly obtained. There is nowhere in this kind of a case any shifting of the burden to

the defendant. The burden rests at all times upon the state to prove the defendant guilty beyond a reasonable doubt.

This question has very recently been before this court. In the case of State v. Delanty, 211 Iowa 50, the more recent cases on the subject are reviewed and extensive quotations are made therefrom, after which this court said:

"Enough has been quoted from previous cases to indicate the error in the instruction under consideration. Here the district court told the jury that the recent possession of stolen property, if unexplained, created a presumption that the possessor 'committed the larceny.' Thus the burden would necessarily fall upon appellant's shoulders to overcome the presumption. Such is not the law, as indicated in the excerpts from the foregoing cases. Moreover, the explanation, according to the instruction, must reveal that the possessor honestly obtained possession. Larceny is charged in the indictment; not the unlawful receipt of stolen property, or any other offense. If it be assumed that someone stole Christensen's hog, and that appellant wrongfully came into possession of it, nevertheless he may not have committed the offense named in the indictment. It may be that the defendant-appellant did not come into possession of the boar hog honestly. Whether he did or not is quite immaterial, unless the larceny was committed by him. If appellant did not steal the hog, he is not guilty under the indictment, regardless of the manner in which possession was obtained."

In the case at bar, there arises the sharp controversy between the State and the defendant as to whether the defendant stole the car or whether, as the defendant claims, he arranged for a ride in the car, then in the possession of and being driven by someone else. The defendant denied the taking of the car, and as previously indicated, his only connection with the car, as he claims, was his stepping into it and starting the motor.

The effect of the instruction given by the trial court was to place the burden upon the defendant to overcome what the court designated as a presumption arising from what is claimed to be the possession of the recently stolen car by the defendant. As was said in State v. Delanty, 211 Iowa 50:

"Throughout the trial, the burden is cast upon the state to prove the appellant guilty beyond a reasonable doubt. The law

does not require that appellant prove his possession was honestly obtained. He may have received the property dishonestly, yet not through a larceny. Any explanation, therefore, of the possession which was inconsistent with guilt would be sufficient in the premises."

In the same case, this court said:

"There is no presumption of guilt in a criminal case of this kind. An inference, however, may arise from the recent possession of stolen property, tending to connect the possessor with the larceny. That inference, under proper conditions, may furnish a suitable substitute for a link missing from, or support one already in, the chain of facts and circumstances connecting the defendant-appellant with the said crime. Nevertheless, at all times the presumption is in favor of innocence."

This rule is so well established that further comment seems unnecessary. As bearing on the subject, see State v. Smith, 207 Iowa 1345; State v. Ivey, 196 Iowa 270; State v. Harris, 194 Iowa 1304; State v. Taylor, 213 Iowa 67.

The instruction in the case at bar constituted prejudicial error, and the cause, therefore, must be, and is,—Reversed.

WAGNER, C. J., and EVANS, STEVENS, FAVILLE, and KINDIG, JJ., concur.