UNITED STATES of America
v.
Alphonso T. JOHNSON, Appellant.

No. 22311.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 17, 1969.

Decided Sept. 4, 1970.

Mr. Nicholas A. Addams, Washington, D. C. (appointed by this court), for appellant.

Mr. Robert P. Watkins, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Asst. U. S. Atty., were on the brief, for appellee.

Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the record was filed, also entered appearances for appellee.

Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was indicted and tried jointly with Charles W. Edwards, Jr., on three counts respectively charging grand larceny of an automobile,[1] unauthorized use of that automobile,[2] and grand larceny of the engine from another automobile.[3] The trial, to a jury, eventuated in Edwards' acquittal on each count and appellant's conviction on all three. This appeal challenges the conviction on a num-

---

1. D.C.Code § 22–2201 (1967).

2. D.C.Code § 22–2204 (1967).

3. D.C.Code § 22–2201 (1967).

ber of grounds, each of which we have examined assiduously. Having done so, we find no error affecting substantial rights, and so we affirm.

### I

On the morning of August 5, 1966, Samuel I. Sherwood fringe-parked his 1957 Chevrolet on a public street in upper northwest Washington, and took a bus to his worksite in the city's downtown area. When he returned about 6:00 o'clock in the evening, the car was gone and was never again seen by him. Several months thereafter, on March 28, 1967, Robert L. Oates, Jr., underwent a similar experience. On that date, he parked his 1962 Chevrolet on a street in northwest Washington, and on the following morning discovered that it was missing. Three days later, on April 1, 1967, he viewed what of his car remained intact. Many of its components, including the engine, had been removed; the vehicle had been stripped to the frame.

On the night of May 5, 1967, Officers John H. Lonien and Lawrence H. Bird halted a 1957 Chevrolet that was smoking excessively and traveling without brake lights. William T. Crippen was driving the automobile and appellant sat on the front seat.[4] At the request of Officer Lonien, Crippen displayed his operator's permit, and appellant produced a registration certificate from the glove compartment.[5] The officer attempted to compare the number appearing on the registration certificate with the serial number on the vehicle's door plate.[6] He then noticed that the plate was affixed to the car with glue, and on touch it fell off into his hand.[7] Appellant, and later Edwards, were arrested.[8]

At the trial, the Government established a factual pattern upon which convictions of appellant and Edwards were sought. Its proof showed plainly that the two auto theft victims, Sherwood and Oates, had lost their vehicles in consequence of felonious takings.[9] Expert testimony demonstrated unequivocally that the car in which appellant and Crippen were arrested was the Chevrolet stolen from Sherwood.[10] It had been partially repainted, its power plant had been supplanted by the engine stolen from Oates' Chevrolet,[11] and other equipment had been replaced as well.[12] The serial number on the door plate, it developed, was that of an automobile purchased by appellant from John Long in early April, 1967—about a month before his arrest—and registered, at his direction, in Edwards' name; and the seats and heater were from that automobile.[13] There was testimony, too, that for some time the Sherwood vehicle was kept on a lot opposite the rear of Edwards' residence; that at a point perhaps a month before the arrests it was without an engine or transmission; that appellant and Edwards "were fixing the car;"[14] and

---

4. So testified Officer Lonien. Crippen's testimony placed appellant on the rear seat, and did not mention his production of the registration certificate.

5. See note 4, *supra*.

6. This was done, said the officer, because the registration certificate designated Edwards as the owner of the car, and he was not present therein at the time.

7. The plate and door frame had been painted over in black, and the serial number was difficult to read even on close examination.

8. The vehicle was also impounded, and later examined with the results hereinafter stated in text.

9. The Government's evidence was clearly sufficient to enable a jury to find that each offense, in all essential elements, had been perpetrated by someone. Thus the issue that loomed large at trial was whether appellant and his codefendant or either had committed one or more of the offenses.

10. This was established by the confidential serial number on the frame.

11. This was established by the serial number on the engine block.

12. See text *infra* at note 13.

13. So testified the vendor of that vehicle to appellant.

14. Crippen testified that appellant had told him this.

that Edwards had lent it to Crippen on several occasions.

At the conclusion of the Government's presentation, the defendants moved for judgments of acquittal.[15] On denial of the motions, neither sought to testify or, aside from a stipulation and a map introduced in Edwards' behalf,[16] to offer any evidence. At the Government's request, over objection by the defense, the trial judge instructed the jury, *inter alia*, that it was at liberty to infer guilt of the charges from the unexplained possession of recently stolen property.[17] As previously stated, the jury acquitted Edwards and convicted appellant on all counts.

## II

With us, larceny is in essence the unlawful taking and carrying away of property of another with intent to appropriate it to a use inconsistent with the latter's rights.[18] Unauthorized use of a motor vehicle, though not congruent with larceny of a motor vehicle,[19] similarly

involves a usurpation of someone else's property.[20] Consequently, we have recognized that a single taking of an automobile may offend the statutes on both offenses and authorize separate though concurrent sentences under each.[21] But it goes without saying that conviction of either offense, as indeed of any crime, entails evidence having enough probative power to convince the jury beyond a reasonable doubt on every essential element, and also on the identity of the accused as a participant.[22]

In the case at bar, as we have noted,[23] the Government's uncontradicted presentation plainly made out a larceny and an unauthorized use of Sherwood's automobile by someone, and a larceny of the engine from Oates' automobile as well. In its effort to prove that appellant and Edwards were the parties who committed those crimes, the Government relied on the inference derivable from the possession of recently stolen property.[24] We have sanctioned resort to the inference for this purpose in both larceny and unauthorized use cases.[25] We have also

15. Fed.R.Crim.P. 29(a).

16. The stipulation was to the effect that on the date of theft of the Sherwood Chevrolet, Edwards was at work from 8:00 a. m. until 4:30 p. m. The map was offered to show the distance from Edwards' place of work to the point at which Sherwood had parked the automobile, and from which ostensibly it was stolen prior to 6:00 p. m.

17. The instruction was as follows:
   If you find beyond a reasonable doubt that the Defendant was in exclusive possession of property of the complainant, and that this property had recently been stolen, and the Defendant's possession of the property on the date in question and under the circumstances in question has not been satisfactorily explained, then you may if you see fit to do so infer therefrom that the Defendant is guilty of larceny or guilty of unauthorized use of a motor vehicle, or both. You are not required to so infer but you may do so if you deem it appropriate.
   The term, recently stolen, does not refer to any specific period of time. It is for you to determine on the basis of all the facts and circumstances whether the property was recently stolen. The

longer the period of time since the property was stolen the weaker is the inference which may be drawn from possession of the property.

18. Pennsylvania Indem. Fire Corp. v. Aldridge, 73 App.D.C. 161, 162–163, 117 F.2d 774, 775–776, 133 A.L.R. 914 (1941). See also Mitchell v. United States, 129 U.S.App.D.C. 292, 295–296, 394 F.2d 767, 770–771 (1968).

19. See United States v. Carr, 135 U.S. App.D.C. 348, 418 F.2d 1184, 1186 (1969).

20. See D.C.Code § 22–2204 (1967).

21. Evans v. United States, 98 U.S.App. D.C. 122, 123, 232 F.2d 379, 380 (1956).

22. In re Winship, 396 U.S. 885, 90 S.Ct. 179, 24 L.Ed.2d 160 (1970).

23. See note 9, *supra*.

24. See Pendergrast v. United States, 135 U.S.App.D.C. 20, 30–35, 416 F.2d 776, 786–791, cert. denied, 395 U.S. 929, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969), and cases cited therein.

25. See the cases cited in Pendergrast v. United States, *supra* note 24, 135 U.S. App.D.C. at 31 n. 64, 416 F.2d at 787 n. 64.

endorsed its use where the possession was of but a portion rather than all of what was stolen.[26] As we have related, the trial judge instructed the jury that it might, if it saw fit, draw such an inference against appellant and his codefendant.

Appellant protests the rendition of that instruction initially on the ground that the evidence could not support a factual finding that he had such possession of the stolen items as would give rise to the inference.[27] In appellant's view, he had no possession at all, and in any event none that could be characterized as exclusive. In consequence, so he argues, the inference could not properly be utilized in securing his conviction and, the Government being without direct evidence of his involvement in the offenses, his motion for a judgment of acquittal should have been honored.

As appellant emphasizes, our past decisions have frequently used the word "exclusive" to denote the kind of possession of stolen property that is prerequisite to an inference of guilt.[28] That word, however, is no more than judicial shorthand for the underlying concept that the accused must bear a distinctive relationship to the property before the inference is allowed. Why this precondition is imposed, and what it necessitates, are insights that readily emerge when the anatomy of the inference is examined closely.

Recently, in our *Pendergrast* decision,[29] we pointed out that "[t]he inference is indulged only where the accused is found in exclusive possession of property recently stolen and the possession is not otherwise explained."[30] We pointed out that "[t]he inference is then permitted because its factual prerequisites, if com-

---

26. Edwards v. United States, 78 U.S.App. D.C. 226, 230, 139 F.2d 365, 369 (1943), cert. denied, 321 U.S. 769, 64 S.Ct. 523, 88 L.Ed. 1064 (1944). See also Dickey v. State, 32 Ala.App. 413, 26 So.2d 532, 534 (1946); Jacobs v. Commonwealth, 260 Ky. 142, 84 S.W.2d 1, 2 (1935); People v. Roman, 12 N.Y.2d 220, 238 N.Y.S.2d 665, 666, 188 N.E.2d 904, 905 (1963); Moore v. State, 140 Tex.Cr.R. 653, 146 S.W.2d 762, rehearing denied, 146 S.W.2d 764 (1941); Williams v. Commonwealth, 188 Va. 583, 50 S.E.2d 407, 414 (1948).

27. Appellant also contends that the instruction allowed the jury to infer the existence of essential elements of the offenses on trial. See Vaughn v. United States, No. 21,066 (D.C.Cir. May 2, 1968) (unpublished). The trial judge charged that in the event that the prerequisites to the inference were found to exist beyond a reasonable doubt, the jury might infer "that the Defendant is guilty of larceny or guilty of unauthorized use of a motor vehicle, or both." Properly instructed, the jury would have been told that the inference permissible was that he was the person who committed those offenses provided the Government had, by other evidence, proved beyond a reasonable doubt all of their essential elements. See the model instruction appended to our opinion in Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 34–35,

416 F.2d at 790–791, decided after the trial in this case.

We are not, however, persuaded that we should reverse on this account. In other portions of the charge, the judge instructed the jury on the presumption of innocence and on the Government's burden of proof beyond a reasonable doubt, admonishing that this burden extended to every essential element of the offenses on trial. Compare Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 32–33, 416 F.2d at 788–789. Moreover, defense counsel objected to the instruction merely "on general principles," and that did not suffice to raise or preserve the present point. See Fed.R.Crim.P. 30. Compare Scott v. United States, 125 U.S.App.D.C. 138, 139, 369 F.2d 183, 184 (1966).

28. *E. g.*, Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 31, 34–35, 416 F.2d at 787, 790–791; Travers v. United States, 118 U.S.App.D.C. 276, 278, 335 F.2d 698, 700 (1964). On the other hand, our opinions have also frequently omitted the word. *E. g.*, Smith v. United States, 123 U.S.App.D.C. 259, 260, 359 F.2d 243, 244 (1966); Smith v. United States, 118 U.S.App.D.C. 235, 236 n. 1, 335 F.2d 270, 271 n. 1 (1964).

29. *Supra* note 24.

30. Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 31, 416 F.2d at 787 (footnotes omitted).

petently established, support a logical deduction that the possession of the stolen property could have been acquired only by the possessor's theft of that property." [31]  "To so infer," we added, " 'is but to accord to the evidence, if unexplained, its natural probative force.' " [32] "Thus, upon analysis," we concluded "this inference appears simply as a result which the jury is free to reach on the basis of the circumstantial evidence which authorizes the inference." [33]

By no sensible measure could an inference that the accused is the party who engineered a larceny-type offense spring from an association with the stolen property that differs little or none from that borne by the general public. On the other hand, the probative force of the association grows stronger as its characteristics involve the accused more particularly.  The association suffices to give the inference evidentiary value when it attains such quality that, when coupled with the other evidence, there is a probability of guilt that a prudent mind could accept as not reasonably doubtful. "Exclusive," then, in this context is not a word of art, but rather a term descriptive of a relationship to stolen property which has achieved that degree of quality.

So it is that the exclusivity requirement, it is held, may be met although the stolen property is not subject to the accused's direct physical control,[34] or located on premises under his dominion.[35] It may be satisfied by something less than that which in other legal contexts traditional concepts of "possession" may demand.[36]  It may be fulfilled, too, by a relationship to the stolen property that is shared with another so long as that relationship is significantly distinguishable from the connection others bear to the property.[37]

By our appraisal, the Government's proof on exclusivity in this case met these governing standards.  The stolen Sherwood Chevrolet, at one time lacking an engine and transmission, had for a considerable period been stationed behind Edward's place of abode.  During this period, the stolen Oates' engine had been installed therein, and seats and a heater as well.  The latter items came from an automobile that lately had been bought and paid for by appellant and at his bidding registered in Edward's name. Very significantly, the serial plate had been taken from that vehicle and glued to the Sherwood car, and that car had been partially repainted.  By appellant's own admission, he collaborated with Edwards in the renovation of the car.

The possession that will activate the inference of guilt may be established by circumstantial evidence.[38]  The facts shown by the Government bespoke a substantial relationship to the stolen properties shared by appellant and Edwards—

---

31. *Id.* at 31, 416 F.2d at 787 (footnote omitted).

32. *Id.* at 32, 416 F.2d at 787–788, quoting McNamara v. Henkel, 226 U.S. 520, 525, 33 S.Ct. 146, 57 L.Ed. 330 (1913) (footnote omitted).

33. *Id.* at 32, 416 F.2d at 788.  On this basis, we held that the jury could resort to the inference although direct proof of the thief's identity was available.  *Id.*

34. Ladd v. State, 39 Ala.App. 172, 98 So. 2d 56, 58, cert. stricken, 266 Ala. 586, 98 So.2d 59 (1957) ; Cheatham v. State, 57 Ga.App. 858, 197 S.E. 70, 71–72 (1938) ; Gamble v. State, 2 Md.App. 271, 234 A.2d 158, 161 (1967).

35. See Marable v. State, 87 Tex.Cr.R. 28, 219 S.W. 455, 456 (1920).

36. See State v. Linders, 246 S.W. 558 (Mo. 1922).

37. See Porter v. People, 31 Colo. 508, 74 P. 879, 881 (1903) ; State v. Linders, *supra* note 36, 246 S.W. at 560; Branson v. Commonwealth, 92 Ky. 330, 17 S.W. 1019 (1891) ; State v. Costin, 46 Wyo. 463, 28 P.2d 782, 784 (1934).

38. People v. Davis, 69 Ill.App.2d 120, 216 N.E.2d 490, 493 (1966) ; State v. Clark, 145 Iowa 731, 122 N.W. 957, 959 (1909). See also Mims v. State, 236 Ind. 439, 140 N.E.2d 878, 880 (1957).

a relationship of a type not matched by anyone else.[39] To a reasonable-minded juror, they might indicate a joint enterprise involving the assembly of an automobile largely from stolen components and efforts to camouflage the true nature of the resulting product.[40] It was, of course, for the jury to say, according to the staunchness of its belief on that score, whether the situation actually was as so indicated. We hold that these facts had enough probative value to warrant the jury in finding that character of possession which, united with the other evidence in the case, would authorize an inference attributing guilt to appellant.[41]

39. We cannot accept Edwards' acquittal as a finding by the jury that he lacked such possession of the stolen properties as would give rise to the inference. From the stipulation introduced at trial, see note 16, *supra*, the jury may well have concluded that Edwards could not have participated in the larceny of Sherwood's car. Additionally, from that and the further circumstance that appellant was the moving spirit in the acquisition of the purchased automobile, the jury could have entertained a reasonable doubt as to Edwards' involvement in the theft of the engine from the Oates' vehicle. In sum, though finding Edwards sharing the requisite possession, the jury could derive from other evidence enough doubt as to whether he collaborated in the commission of the offenses to bring about his acquittal. Thus we perceive no necessary inconsistency between Edwards' acquittal and appellant's conviction. In any event, it is well settled that apparent inconsistency in verdicts rendered as to multiple defendants tried together is not ground for reversal. United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48 (1943); American Medical Ass'n v. United States, 76 U.S.App.D.C. 70, 89, 130 F.2d 233, 252 (1942), aff'd, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434 (1943); and see cases cited in Annot., 22 A.L.R. 3d 717 (1968). *Cf.* United States v. Fox, 140 U.S.App.D.C. ——, 433 F.2d 1235–1239, (June 30, 1970).

40. Compare State v. Linders, *supra* note 36. The time factors, though relevant, were not dispositive. As the trial judge instructed, the inference pales in direct proportion to the passage of time, with the concomitant increase in opportunity for the property to change hands. Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 31 n. 66, 416 F.2d at 787 n. 66; Travers v. United States, *supra* note 28, 118 U.S.App.D.C. at 280, 335 F.2d at 702. Yet the concept of recency is relative, and its elasticity depends heavily upon the nature of the property, *e. g.*, McHenry v. State, 52 Okl.Cr. 20, 2 P.2d 597, 598 (1931); State v. Lyles, 211 S.C. 334, 45 S.E.2d 181, 184 (1947); Wilborne v. Commonwealth, 182 Va. 63,

28 S.E.2d 1, 3–4 (1943), and the surrounding circumstances, *e. g.*, Commonwealth v. Dock, 146 Pa.Super. 16, 21 A.2d 429, 430 (1941). Generally speaking, the period which may be deemed recent lengthens inversely with the property's disposability, *e. g.*, People v. Malin, 372 Ill. 422, 24 N.E.2d 349, 352 (1939); McHenry v. State, *supra*, 2 P.2d at 598; Commonwealth v. Dock, *supra*, 21 A.2d at 430, and here the two items were bulky automobile components each of which, as most people would know, bore serial numbers. The interval between the theft of Oates' car and appellant's arrest was but slightly more than a month, compare, *e. g.*, Scott v. United States, *supra* note 27, 125 U.S.App.D.C. at 139, 369 F.2d at 184; Gilbert v. United States, 94 U.S. App.D.C. 321, 322–323, 215 F.2d 334, 335–336 (1954), and a bridge to the Sherwood car was built by the installation of the Oates' engine in it and the affixing to it of a false door plate. All told, we cannot say that as a matter of law the jury could not consider the possession to be recent within the rule of inference. See People v. Pride, 16 Ill.2d 82, 156 N.E. 2d 551, 556 (1959); Butz v. State, 221 Md. 68, 156 A.2d 423, 427–428 (1959). And compare Boehm v. United States, 271 F. 454, 457 (2d Cir. 1921) (possession of automobile tires for more than four months); State v. Brightman, 252 Iowa 1278, 110 N.W.2d 315, 317–318 (1961) (possession of two suits of clothing for more than five months); Cason v. State, 230 Md. 356, 187 A.2d 103, 104 (1963) (possession of a transistor radio for more than four months); Anglin v. State, 1 Md.App. 85, 227 A.2d 364, 368 (1967) (possession of items of stolen jewelry for more than six months); State v. Miller, 45 Minn. 521, 48 N.W. 401, 402 (1891) (possession of a harness for more than eleven months); McHenry v. State, *supra* (possession of metal tools for more than six months).

41. By the same token, the evidence (a) required denial of appellant's motion for judgment of acquittal, compare Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947);

## III

Appellant challenges, not only on the basis of the evidentiary display at trial but also on broad constitutional grounds, the propriety of the court's instruction incorporating the rule permitting an inference of guilt from the possession—as we have defined it—of recently stolen property. He endeavors to predicate a deprivation of due process upon the assumed nonexistence of a sufficient connection between the proved fact of that type of possession and the conditionally inferred fact that the possessor is the party responsible for the theft.[42] As a practical matter, appellant continues, such an instruction runs afoul of the accused's privilege against self-incrimination,[43] and improperly calls the jury's attention to a non-testifying accused's failure to take the witness stand.[44] Since the jurors may have given the instruction here a leading if not the decisive role in their deliberations, it is incumbent upon us to deal with the constitutional issues appellant poses.[45]

We believe, however, that the fallacies enveloped within these contentions are laid bare when the conditions which must precede indulgence in the questioned inference are recalled.[46] Before the jury may resort to the inference, it must first find that the Government has proved beyond a reasonable doubt every essential element of the corpus delicti.[47] The jury must then find, likewise beyond a reasonable doubt, that in the commission of the offense property was stolen and that recently thereafter the accused was caught with it.[48] Even if those findings are made, the inference is forbidden if the accused's possession of the stolen property is satisfactorily explained by other circumstances shown by the evidence.[49] Very importantly, the only inference ever permitted is that the accused is the thief,[50] and even that deduction the jury is left free to reject [51] although the possession is unsatisfactorily justified, or indeed is totally unelucidated.[52] And the jury must forego the inference if on the evidence as a whole it has a rea-

(b) sustained the jury's adjudication of guilt, see Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 99 L.Ed. 150 (1954) ; Hunt v. United States, 115 U.S.App.D.C. 1, 3, 316 F.2d 652, 654 (1963) ; and (c) warranted the trial judge's instruction authorizing appellant's conviction on the theory of aiding and abetting, whether or not the conviction would actually be rested on that basis. *Cf.* Bailey v. United States, 135 U.S.App. D.C. 95, 416 F.2d 1110 (1969). We reject the argument that the judge should have severed for separate trials the counts respectively charging appellant with larceny of the Sherwood automobile and larceny of the Oates engine. See Bradley v. United States, 136 U.S.App.D.C. 339, 420 F.2d 181 (1969).

42. See Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) ; United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965) ; Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) ; Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

43. See, *e. g.,* Simmons v. United States, 390 U.S. 377, 389–394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

44. See, *e. g.,* Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

45. Compare Turner v. United States, *supra* note 42, 396 U.S. at 407, 90 S.Ct. 642 ; Leary v. United States, *supra* note 42, 395 U.S. at 31–32, 89 S.Ct. 1532 ; United States v. Romano, *supra* note 42, 382 U.S. at 138–139, 86 S.Ct. 279.

46. See text *supra* at notes 30–33.

47. Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 34–35, 416 F.2d at 790–791. See also Vaughn v. United States, *supra* note 27.

48. Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 31, 34–35, 416 F.2d at 787, 790–791. See also Part II, *supra.*

49. *Id.*

50. *Id.* at 34, 416 F.2d at 790.

51. *Id.* at 32, 34–35, 416 F.2d at 788, 790–791, quoted *infra* note 56.

52. *Id.* at 34–35, 416 F.2d at 790–791.

sonable doubt as to the guilt of the accused.[53]

So dissected, and when scrutinized in the light of constitutional mandates, we think the rule of inference under discussion, in its orthodox operation, prevails over appellant's several objections. For the rule to stand, there must exist a rational bond between the facts it obliges the Government to prove and the fact it authorizes the jury to ultimately infer;[54] due process is fatally lacking "if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience."[55] This means that a common law rule authorizing a guilty inference, no less than "a criminal statutory presumption[,] must be regarded as 'irrational' or 'arbitrary,' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed[56] fact is more likely than not to flow from the proved fact on which it is made to depend."[57] Beyond that, and because proof beyond a reasonable doubt is itself an indispensible ingredient of due process in criminal cases,[58] a rule of inference "which passes muster when so judged [by the more-likely-than-not standard] must also satisfy the criminal 'reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use."[59] This latter, in such circumstances, imposes in turn the requirement that the inference authorized, standing alone, possess such potency that a jury could prudently accept it as proof of guilt to a moral certainty.[60]

In our view, the rule of inference under consideration, competently invoked, passes the tests both of more-likely-than-not and reasonable doubt. The facts the establishment of which preconditions utilization of the rule[61] themselves warrant the deduction that the possessor of lately stolen property came by it only in consequence of the theft.[62] The rule thus refines an aspect of the law of circumstantial evidence simply by describing an optional significance the jury is already at liberty to ascribe to the foundation

53. *Id.*

54. See the cases cited *supra* note 42.

55. Tot v. United States, *supra* note 42, 319 U.S. at 467–468, 63 S.Ct. 1241, (footnote omitted). See also Leary v. United States, *supra* note 42, 395 U.S. at 32–36, 89 S.Ct. 1532; United States v. Gainey, *supra* note 42, 380 U.S. at 66–67, 85 S.Ct. 754. Cf. United States v. Romano, *supra* note 42, 382 U.S. at 139, 86 S.Ct. 279. These cases involved statutory inferences, but we perceive no reason why the constitutional standards would differ for inferences that are judicially conceived.

56. As we emphasized in Pendergrast v. United States, *supra* note 24, 135 U.S. App.D.C. at 32, 416 F.2d at 788, "the principle under consideration is a matter of permissible inference at the jury's discretion, rather than a compelled inference like a presumption, and this distinction is significant." (footnotes omitted).

57. Leary v. United States, *supra* note 42, 395 U.S. at 36, 89 S.Ct. at 1548 (footnote omitted). See also Turner v. United States, *supra* note 42, 396 U.S. at 405, 90 S.Ct. 642.

58. In re Winship, *supra* note 22.

59. Leary v. United States, *supra* note 42, 395 U.S. at 36 n. 64, 89 S.Ct. at 1548.

See also Turner v. United States, *supra* note 42, 396 U.S. at 405, 408, 416–418, 422–424, 90 S.Ct. 642.

60. See United States v. Adams, 293 F. Supp. 776, 783–784 (S.D.N.Y.1968) ; see also United States v. Romano, *supra* note 42, 382 U.S. at 141–142, 86 S.Ct. 279; Note, The Constitutionality of Statutory Criminal Presumptions, 34 U.Chi.L.Rev. 141, 150–53 (1966), all cited in Leary v. United States, *supra* note 42, 395 U.S. at 36 n. 64, 89 S.Ct. 1532. This is but the normal judicial standard by which the trial judge appraises the sufficiency of the evidence to determine whether the case should be submitted to the jury, and is to be sharply distinguished from the evidentiary relationship commonly referred to as relevance. Identity of the constitutional and judicial standards maintains the Government's burden of proof at a constant level, and properly so since juries can no more be given range to find the existence of facts irrationally than to ponder evidence on which guilt cannot rationally be predicated.

61. Text *supra* at notes 47–49.

62. Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 31, 416 F.2d at 787. See also text *supra* at notes 31–33.

facts.[63] We are not persuaded that due process is offended by the expression of a principle "which [does] no more than 'accord to the evidence, if unexplained, its natural probative force.'" [64]

For centuries now, jurists have accepted the unexplained possession of freshly stolen property not only as trustworthy evidence of the inferred identity of the thief,[65] but also as evidence that might suffice to convince levelheaded jurors that he is indeed the guilty party.[66] For perhaps as long, juries, reflecting the conscience of the community, have found, in an intensely "common sense" approach,[67] that kind of possession to be convincing of the wrongdoer's identity frequently enough to bring forth convictions in a substantial percentage of the occasions on which it was tendered for consideration.[68] We do not, of course, attribute the constitutional validity of the inference merely to its ancient vintage, but

neither are we inclined to discount these many pages of judicial history. For us they afford a "broad ground of experience which supports the conclusion [of guilt] * * * in such a large proportion of * * * instances that a jury may be instructed that it may draw such a conclusion in the absence of any explanation." [69] We hold that the link between proof of unexplained possession of recently stolen property and the allowable deduction as to who stole it measures up to the mark, and supplies all the nexus that due process demands.[70]

Nor can we detect in an instruction conventionally applying the rule of inference an unconstitutional burden on the accused's right to maintain his silence at trial. We cannot fairly characterize it as a comment on his failure to testify,[71] nor can we regard it as illegitimate coercion to take the witness stand.[72] The jury is told, we reiterate, not that it

---

63. See *id.* at 31–32, 416 F.2d at 787–788.

64. United States v. Gainey, *supra* note 42, 380 U.S. at 71, 85 S.Ct. at 759, sustaining an instruction based on the provision of 26 U.S.C. § 5601(b) (2) (1964) authorizing a finding of guilt of illegal distilling operations from an unexplained presence at an illegal still. Gainey quotes McNamara v. Henkel, *supra* note 32, 226 U.S. at 525, 33 S.Ct. 146, in which the quoted language was used in reference to the selfsame inference involved in the case at bar.

65. See cases collected in 1 J. Wigmore, Evidence §§ 152, 153 (3d ed. 1940).

66. See cases collected in 9 J. Wigmore, Evidence § 2513 (3d ed. 1940).

67. See Turner v. United States, *supra* note 42, 396 U.S. at 417, 90 S.Ct. 642; Leary v. United States, *supra* note 42, 395 U.S. at 46, 89 S.Ct. 1532.

68. Juries, of course, also frequently acquit, but a valid inference may "be created upon a view of relation broader than that a jury might take in a specific case." Tot v. United States, *supra* note 42, 319 U.S. at 468, 63 S.Ct. at 1245 (footnote omitted).

69. United States v. Romano, 330 F.2d 566, 571 (2d Cir. 1964), aff'd, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965). Compare United States v. Gainey, *supra* note 42, 380 U.S. at 66–68, 85 S.Ct. 754. *Cf.* United States v. Romano, *supra* note 42,

382 U.S. at 140–142, 86 S.Ct. 279. What invalidates an inference or presumption on due process grounds is a "lack of connection between" the proven and the inferred facts "in common experience"—the lack of a "reasonable relation to the circumstances of life as we know them * *", Tot v. United States, *supra* note 42, 319 U.S. at 467–468, 63 S.Ct. at 1245, and "[t]he process of making the determination of rationality is, by it nature, highly empirical. * * *" United States v. Gainey, *supra* note 42, 380 U.S. at 67, 85 S.Ct. at 759.

70. As we have observed, text *supra* at note 40, the evidence in the case at bar sufficed to authorize the jury, if so persuaded, to find the assembly of a new vehicle principally from stolen components coupled with an attempt to conceal their identity.

71. See United States v. Gainey, *supra* note 42, 380 U.S. at 70–71, 85 S.Ct. 754; United States v. Williams, 405 F.2d 14, 17 (4th Cir. 1968); Ashley v. United States, 413 F.2d 249, 251 (5th Cir. 1969).

72. See Turner v. United States, *supra* note 42, 396 U.S. at 418, 90 S.Ct. 642; Yee Hem v. United States, 268 U.S. 178, 185, 45 S.Ct. 470, 69 L.Ed. 904 (1925). See also Harrison v. United States, 392 U.S. 219, 222, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968).

must, but only that it may, as it is swayed by the circumstances in proof, draw the inference in the absence of satisfactory explanation,[73] and that an acceptable explanation dissipates the inference completely.[74] That accounting, moreover, as the jury is further informed, need not come from the accused's own lips, but may proceed from any evidentiary source whatever.[75] Even where, in particular instances, the accused alone is able to furnish the explication, the situation does not differ in a constitutional sense from any other wherein the accused's dilemma is generated by the eloquence of the proof lawfully mounted against him.[76] As Judge Soboleff recently stated for the Fourth Circuit when rejecting the same two contentions our appellant presses:

> The inference is derived from the weight of the evidence and not from the defendant's failure to take the stand. Evidence which leaves unexplained the possession of recently stolen property may give rise to an inference of guilt. The trier of fact may accept or reject the inference, which does not affect the presumption of innocence or alter in any way the prosecution's burden of proof. It represents nothing more than a rational conclusion based on circumstantial evidence, and this not forbidden by common sense or the Constitution.[77]

The judgment of appellant's conviction is

Affirmed.[78]

BAZELON, Chief Judge (dissenting):

When arrested, appellant was the passenger in a vehicle constructed from two stolen automobiles. At trial, the evidence most favorable to the Government indicated that appellant had been associated with this vehicle for one month; its components were the engine from an automobile stolen five-and-a-half weeks before appellant's arrest and the body of a 1957 Chevrolet which had been missing for nine months. These circumstances do not provide the requisite basis for inferring theft from "the *exclusive* possession of *recently* stolen property."

---

73. *E. g.*, Pendergrast v. United States, *supra* note 24, 135 U.S.App.D.C. at 31, 34–35, 416 F.2d at 787, 790–791. Compare United States v. Gainey, *supra* note 42, 380 U.S. at 70, 85 S.Ct. 754. See also text *supra* at notes 51–52.

74. *Id.* See also text *supra* at note 49.

75. *Id.* 135 U.S.App.D.C. at 35, 416 F.2d at 791.

76. See cases cited *supra* note 72.

77. United States v. Williams, *supra* note 71, 405 F.2d at 17 (footnote omitted). See also, rejecting similar arguments, Ashley v. United States, *supra* note 71, 413 F.2d at 251; State v. Young, 217 So.2d 567, 571 (Fla.1968) ; State v. Dirienzo, 53 N.J. 360, 251 A.2d 99, 104–108 (1969). The cases relied upon by appellant are inapposite, for in each the instruction was condemned because it shifted the onus of proof away from the prosecution and onto the defense. People v. Kubulis, 298 Ill. 523, 131 N.E. 595, 596 (1921) ("prima facie evidence of guilt"); State v. Davis, 214 Iowa 329, 242 N.W. 51, 52 (1931) ("presumption of guilt") ; State v. Harrington, 176 N.C. 716, 96 S.E. 892 (1919) ("presumption of guilt"). No such difficulty emerges here, where the questioned instructions neither lessened nor transposed the Government's burden of proof.

78. Our dissenting colleague theorizes that John Long, from whom appellant purchased an automobile shortly prior to arrest, may himself have stolen and then combined the Sherwood and Oates Chevrolets. This theory clashes with Long's undisputed testimony that the car he sold appellant had a 1959 Pontiac engine, not a 1962 Chevrolet engine, and a special transmission mount which was not found on the vehicle in which appellant was arrested. It seems inconsistent, too, with other testimony that about a month before the arrest the latter vehicle lay behind Edwards' residence without any engine or transmission at all.

The trial judge's instructions as a whole put it to the jury to acquit appellant if they had a reasonable doubt as to his guilt by virtue of the possibility that Long was the culprit. The jury not only heard the evidence but also observed the demeanor of Long as a Government witness at the trial. We cannot say that the jury acted irrationally in concluding to a moral certainty that appellant was guilty as charged.

Pendergrast v. United States, 135 U.S. App.D.C. 20, 416 F.2d 776 (1969) (emphasis added).[1] Nor do they lead to the "logical deduction" that "the possession of the stolen property could have been acquired only by the possessor's theft of that property." *Id.* at 31, 416 F.2d at 787.

Long, a principal prosecution witness, testified that he sold appellant a reconstructed 1957 Chevrolet in April 1967, eight months after the disappearance of the Sherwood car and one week after the Oates car was taken. The car in which appellant was arrested bore the public serial number of the one purchased from Long, but its confidential numbers showed it to be the Sherwood-Oates automobile. Although Long maintained that the car he had sold was not the car in which appellant was arrested,[2] he admitted that he had owned a blue and white 1957 Chevrolet (like Sherwood's) at this time and that he might have also given that car to appellant.

While the identity of the thief may be shown by circumstantial evidence,[3] the effect of the instruction in the circumstances of this case was to multiply the "natural probative force"[4] of the evidence by inviting the jury to hurdle a gap of eight months in the chain of evidence during which period the defendant was not shown to have had *any* (much less "exclusive") possession of the property. This violates elemental principles of criminal law which at the least require "substantial assurance that the presumed fact is more likely than not to flow from the proved facts on which it is made to depend." Leary v. United States, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed. 2d 57 (1969); *cf.* United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

If the inference is to be measured by the higher standard of "reasonable doubt," *see* Turner v. United States, 396 U.S. 398, 408, 416–418, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), as the court today holds, I do not see how it can properly be invoked in this case, since the evidence adduced by the prosecution, independent of the "first aid" supplied by the inference,[5] was not sufficient to allow a rational juror to find guilt beyond a reasonable doubt.[6] On the prosecution's evidence it was equally possible either (1) that appellant had stolen the Sherwood and Oates automobiles, or (2) that Government witness Long had stolen them, combined the Sherwood body and the Oates engine, and then sold appellant the product, which was registered in Edwards' name and kept in his driveway, where appellant and Edwards were said to have worked on it. The ambiguous nature of this evidence does not lay the

1. There the instruction was premised on a showing that *a few minutes* after he was robbed, the victim identified Pendergrast as his assailant, and a search of his person uncovered the stolen property. 135 U.S.App.D.C. at 22, 416 F.2d at 778.

2. No evidence was introduced to explain what became of the car purchased from Long if it was not the car in which appellant was arrested; it is also unclear why, if appellant had stolen the Sherwood and Oates cars, he would have purchased another, elaborately improved car from Long just to get its serial number door plate.

3. *See* majority opinion *supra* at 1165, & n. 38, *citing* People v. Davis, 69 Ill.App.2d 120, 216 N.E.2d 490 (1966) (evidence insufficient to support conviction where officers pursued stolen car and apprehended defendant "a couple of feet" behind the abandoned vehicle; conviction reversed); *cf.* People v. Foley, 307 N.Y. 490, 121 N.E.2d 516 (1954) (circumstantial evidence must exclude to a moral certainty every other inference but that of recent and exclusive possession by defendant; reversed for a new trial).

4. Pendergrast v. United States, 135 U.S. App.D.C. at 32, 416 F.2d at 788.

5. *See* Chamberlain, Presumptions as First Aid to the District Attorney, 14 A.B.A.J. 287 (1928).

6. *See* Curley v. United States, 81 U.S.App. D.C. 389, 160 F.2d 229 (1947); Goldstein, The State and The Accused: Balance of Advantage in Criminal Procedure, 69 Yale L.J. 1149, 1156–59 (1960).

basis for the jury to infer appellant's guilt "to a moral certainty," [7] because it does not establish beyond a reasonable doubt that appellant's possession of the car could *only* have been acquired by *his* theft of the two automobiles.[8]

---

7. *See* majority opinion at 1170 *supra.*

8. *See* Pendergrast, *supra*, 135 U.S.App. D.C. at 31, 416 F.2d at 787; *cf.* Goodwin v. United States, 121 U.S.App.D.C. 9, 347 F.2d 793 (1965), cert. denied,

Vaughn v. United States, 382 U.S. 855, 86 S.Ct. 107, 15 L.Ed.2d 93 (1966).